Renee M. Finch
Nevada State Bar 13118
**MESSNER REEVES LLP**
8945 W. Russell Road, Suite 300
Las Vegas, Nevada 89148
Phone:      (702) 363-5100
Email:      *rfinch@messner.com*
*Attorneys for Plaintiff*, Treasure Island, LLC

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| TREASURE ISLAND, LLC, | Case No.:  2:20-cv-00965-JCM-EJY |
| *Plaintiff*, | |
| | **TREASURE ISLAND, LLC'S** <br> **MOTION TO COMPEL** |
| vs. | |
| | **ORAL ARGUMENT REQUESTED** |
| AFFILIATED FM INSURANCE COMPANY, | |
| *Defendant*. | Complaint filed:  May 28, 2020 |

1

## INTRODUCTION

Affiliated FM Insurance Co. ("AFM") has flouted its discovery obligations under the Federal Rules of Civil Procedure and the Parties' Joint Discovery Plan filed with the Court in this case. With more than $40 million in dispute, AFM has unilaterally decided to limit its search for relevant documents to: (a) a few "central online files," (b) 1 or 2 custodians, and (c) hard copy documents at one office. This is, on its face, inadequate. The parties have met and conferred at length, and to no end. AFM just wants to run out the discovery clock by dragging its feet. It has taken the position, essentially, that plaintiff Treasure Island, LLC, will get whatever AFM wants to give, notwithstanding the Joint Discovery Plan and the Stipulation Concerning Production of Electronically Stored Information, which the Court entered as an order. Enough is enough. AFM should be ordered to comply with its discovery obligations, conduct proper searches, and produce documents for issues of fundamental importance to this case.

## FACTUAL BACKGROUND

a.  The Policy

Treasure Island filed this lawsuit against AFM on May 28, 2020, because AFM refused to provide coverage for Treasure Island's losses due to COVID-19. AFM sold Treasure Island a policy ("Policy") that covers "ALL RISKS OF PHYSICAL LOSS OR DAMAGE except as [] excluded." The Policy provides coverage under multiple coverage sections for loss caused by Communicable Disease (like COVID-19), a covered cause of loss that is specifically defined in the Policy. Some coverages mention Communicable Disease specifically; others apply more broadly to any loss "of the type insured" (which necessarily includes Communicable Disease). Importantly, the Policy's multiple applicable coverages are not mutually exclusive. And, while some may be subject to sublimits; others plainly are not. Furthermore, the Policy's "Contamination

Exclusion," which specifies the types of loss to which it applies, makes no mention of Communicable Disease and, thus, clearly does not apply to any coverage for COVID-19 loss.

b.   Notice of Claim

Treasure Island put AFM on notice of its Claim on March 19, 2020. The adjuster responded aggressively, trying to shoe-horn Treasure Island's claim into the low-limits Communicable Disease coverage and churning out self-serving letters misrepresenting his interactions with Treasure Island about the claim. The adjuster ignored the fact that COVID-19 and the resulting civil authority orders caused "physical loss" and that the prevalence of COVID-19 in the air and on surfaces caused "damage" to property.

But the adjuster's disregard for the Policy, the facts surrounding Treasure Island's claimed loss, and basic medical science was not random or inadvertent. The adjuster followed orders from AFM. He followed a script of "Talking Points" that AFM developed to avoid investigation of the claim. The "Talking Points" dictated AFM's pre-determined result—denial of any meaningful coverage for COVID-19. In the face of AFM's conduct, Treasure Island filed this lawsuit seeking a declaratory judgment (Count I) and alleging breach of contract (Counts II-IV), breach of the implied covenant of good faith and fair Dealing (Count V), and violation of the Nevada Unfair Claims Practices Act, Nev. Rev. Stat. § 686A.310 (Count VI).

c.   Treasure Island's Discovery

In accordance with the Local Rules of Practice, after AFM answered the complaint the parties conferred regarding deadlines in the case. They agreed on a Joint Discovery Plan with dates generally consistent with LR 26-1(b) (Exhibit 1, *Declaration of Christopher J. Cunio in Support of Treasure Island's Motion to Compel* ("Cunio Dec.") at Ex. A). AFM did not seek bifurcation of discovery. AFM did not even raise the issue. Nor does the Joint Discovery Plan, which the Court

approved on July 28, 2020, even contemplate bifurcation of discovery. Instead, it allows discovery on all matters "relating to the allegations set forth in Plaintiff's Complaint and Defendant's Answer," and there are no "limitations on [the scope] of discovery." ECF 33 at 2.

Treasure Island promptly served document requests and interrogatories on August 10, 2020. While AFM's responses were outstanding, the parties entered into a Stipulation Concerning Production of Electronically Stored Information (Ex. C to Cunio Dec.), which the Court entered as an Order on September 3, 2020. The Stipulation and Order require that the parties "meet and confer an attempt in good faith to reach agreement regarding: i. the method of searching and, if applicable, the words, terms, and phrases to be searched; and, ii. the custodians and non-custodial sources for whom ESI will be collected and searched." AFM responded to Treasure Island's discovery on September 9, 2020 (Ex. D and E to Cunio Dec.)—but it produced no documents and no privilege log, and did not say when these would be forthcoming, in direct contravention of Fed. R. Civ. P. 34(b)(2). Two days later, Treasure Island sought to meet and confer regarding the deficiencies, and it specifically inquired about search terms and custodians per the Stipulation and Order. AFM responded that it had unilaterally limited its searches to certain "central online files" and the emails and "file" of <u>one</u> custodian. It did not identify the search terms it used on that custodian's data.[1] After further correspondence (September 12 and 25 and October 8 letters, Ex. G, I, and J to Cunio Dec.) and a meet and confer session, AFM finally made paltry productions on

---

[1] AFM's refusal to appropriately collect from all custodians all relevant documents and data raises serious concerns about spoliation. AFM's initial production makes clear that there are at least 18 custodians. AFM should be ordered to identify all custodians and preserve all documents and data, as requested above. Moreover, that production also makes clear that, in addition to whatever "central online file" there is, AFM's employees routinely keep relevant documents and information outside that location, on their own hard drives. <u>Ex. 2</u> (AFM002487). As requested above, AFM should be ordered to search *all relevant locations*. This includes *but is not limited* to the "central online file."

October 7 and 14 and served revised written responses (with added objections, many of which are untimely, waived, and ineffectual) (Ex. L and M to Cunio Dec.).

Meanwhile, the discovery clock continues to tick. Every day of delay is a victory for AFM and prejudices Treasure Island.[2]

## DISCOVERY DISPUTE

AFM's production is deficient with respect to <u>nine</u> categories of documents: (1) the Talking Points, (2) the Claim File, (3) the Underwriting File, (4) Claim Manuals and Underwriting Manuals, (5) submissions to state regulators regarding the Contamination Exclusion and the Communicable Disease Coverages, (6) drafts of the Policy at issue, (7) AFM's claims to any insurer or reinsurer, (8) information concerning other insureds and claims, and (9) other cases involving the form policy and claims for communicable disease coverage.[3]

(1) **The "Talking Points"**

**REQUEST NO. 4:** All documents concerning the document attached as Exhibit H to the Complaint—the Talking Points (Dkt. 2-8).

**AMENDED[4] RESPONSE TO REQUEST NO. 4:** AFM objects to this request on the grounds that it is overly broad, vague and ambiguous with respect to the phrase "all documents concerning." The burden of reviewing the AFM's files, obtaining

---

[2] For example, Treasure Island's Rule 26(a)(2) disclosures are due November 6, 2020. Treasure Island intends to proffer an expert who is expected to opine that AFM breached its duties of good faith and fair dealing by, among other things, failing to follow its own internal claim guidelines and industry best practices in the handling and investigation of Treasure Island's claim. Without AFM's claim documents, including its claim manuals, Treasure Island's expert cannot offer a complete opinion on these and other claim-related issues.

[3] Treasure Island is moving to compel on these items now. It reserves the right to move to compel on other issues if and when those disputes ripen. In addition, it should be noted that where the deficiencies impact multiple document requests, Treasure Island quotes the most relevant request and lists the others for reference.

[4] In all quoted responses, Treasure Island includes AFM's <u>Amended</u> response. For the purpose of clarifying the changes made to AFM's original responses, Treasure Island will use <u>underlining</u> to indicate a portion that was added in the AFM's Amended Response, and strikethrough any language that was stricken from the original response.

consent from the insureds whose information may be included in the documents, and providing such documents, which would require thousands of man hours and potentially detract from AFM's ability to handle its existing claim load, far outweighs any conceivable, negligible benefit to the plaintiff. <u>In addition, documents concerning Exhibit H are only relevant, if at all, to whether it acted in bad faith toward Treasure Island. Inasmuch as Treasure Island has yet to demonstrate it even has claim, let alone a wrongful withholding of policy benefits, discovery regarding its bad faith claim is premature and disproportionate to the burden to AFM of such discovery.</u> AFM also objects that this request seeks documents protected from disclosure by the attorney-client privilege and documents which are confidential and proprietary in nature. <u>Without waiving the foregoing objections, AFM will produce the non-privileged, non-proprietary documents that were reviewed in connection with preparing Exhibit H.</u>[5]

<u>Analysis</u>: The "Talking Points" are of central importance. The Policy on its face covers loss caused by COVID-19, both at Treasure Island and elsewhere. Yet, AFM plainly refused to appropriately investigate and properly adjust Treasure Island's claim as required by the Policy and Nevada law. *See* Nev. Rev. Stat. § 686A.310(1)(a) & (c) (insurer may not misrepresent facts or policy provisions and must have reasonable standards for prompt investigation and processing of claims); *see Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 863 F. Supp. 1237, 1249 (D. Nev. 1994) ("A complete failure to investigate would be evidence of an insurer's reckless disregard as to the reasonableness of its denial."); *Hart v. Prudential Prop. & Cas. Ins. Co.*, 848 F. Supp. 900, 905 n.4 (D. Nev. 1994) (*quoting Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 819 (1979)) ("[a]n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial"); see also R.J. Clark et al., Law & Practice of Insurance Coverage Litig. (June 2020 update) § 28:28 (insurer liable for inadequate or limited investigation of claim); P.J. Kalis et al., Policyholder's Guide to the Law of Insurance Coverage § 24.06[B][2] (1st Edition, 2020-1 Supp. 2012) ("failure to properly investigate claims before denial" may give rise to action against insurer); 14A S. Plitt et al., Couch

---

[5] *See also* RFPD No. 5 and corresponding Response.

on Ins. (3d ed. June 2020 update) § 207:24 (insurers have duty to investigate claims before denial); 46 Am. Jur. Proof of Facts 3d 289 (June 2020 update) ("An insurer confronted with a claim owes its insured a duty to investigate the claim fully and fairly.").

AFM's adjuster conducted <u>no</u> investigation. He just followed the Talking Points and reached AFM's pre-determined conclusion that there is no meaningful coverage for COVID-19. Even worse, the adjuster bolstered his position by colluding internally with AFM's underwriter, who advised that AFM had elected to not renew its Policy only days earlier. In response, the adjuster wrote, "Thanks! That helps!" <u>Exhibit 3</u> (AFM 2445). Of course, Treasure Island's decision to move its business is of no relevance to the coverage determination, yet the adjuster said it somehow "help[ed]" him deny coverage.

Treasure Island is therefore seeking all documents concerning the Talking Points. This includes all drafts of them and all emails about their creation and showing their distribution. Presumably, these documents are confined to this year and a limited number of individuals, since they only came to exist in response to COVID-19.

None of AFM's reasons for resisting this production is valid. The protective order addresses their concerns about proprietary information. The request is not "premature," as AFM claims. AFM agreed to discovery on all matters "relating to the allegations set forth in Plaintiff's Complaint," which obviously includes allegations of AFM's bad faith set out in Count VI. The Parties have operated under the Discovery Plan for nearly four months now, with AFM itself seeking broad discovery from Treasure Island through interrogatories seeking discovery about "any fact, circumstance or position alleged in the Complaint." *See, e.g.*, AFM's First Set of Interrogatories to Plaintiff, Nos, 1-2. AFM's newfound, strategic affinity for bifurcation comes far too late. Numerous courts in this district have recognized that bifurcating <u>discovery</u> in insurance-coverage

disputes is inappropriate and inefficient, even if the bad-faith claims are bifurcated <u>for trial</u>.[6] It is

obstruction, plain and simple.

    <u>Requested Order</u>: This Court should order AFM to identify all individuals (by names, job

titles, and year(s) of employment) who were involved in the creating and distribution of the Talking

Points, and to search for and produce from <u>all</u> devices (computers, phones, tablets, and so forth)

and sources of data and documents (including emails, hard drives, and paper files) for these same

individuals. That includes searching all devices and sources of documents of Brian Cook, Doug

Backes and Robert Brunelli—all of whom (according to AFM's Answer to Interrogatory No. 3)

were involved in the preparation of the Talking Points—as a starting point.

    (2) **The "Claim File"**

    <u>**REQUEST NO. 14:**</u> Your entire claim file for the Claim.

    <u>**AMENDED RESPONSE TO REQUEST NO. 14:**</u> AFM objects to this request
on the grounds that it seeks documents protected from disclosure by the attorney-
client privilege. AFM further objects to this request on the grounds that it seeks
documents which are confidential and proprietary in nature. Without waiving these

---

[6] *See Alele v. Geico Gen. Ins. Co.*, 420 F. Supp. 3d 1124, 1130 (D. Nev. 2019) ("Bifurcation
of discovery is not warranted in this case. [Plaintiff's] claims are intertwined and separating
discovery would unnecessarily prolong the process and waste judicial resources supervising two
phases of discovery."); *Rosas v. GEICO Cas. Co.*, 365 F. Supp. 3d 1123, 1128 (D. Nev. 2019)
("There is no reason to bifurcate or stay [plaintiff']s second and third claims at this stage.
[Plaintiff's] claims are intertwined, so separating and staying at this time would unnecessarily
prolong the process and waste judicial resources supervising two phases of discovery."); *Ahuja v.
W. United Ins. Co.*, No. 3:13-CV-00038, 2013 WL 5316538, at *3 (D. Nev. Sept. 23, 2013) ("[J]oint
discovery will likely lead to more efficient resolution of the case as a whole, whether the case
settles or proceeds to trial. . . . The parties' discovery requests will likely overlap substantially for
the various claims and the responses will provide essential information for the speedy resolution
of all claims. Additionally, any discovery disputes that arise would likely pertain to all claims and
thus joint discovery will likely prevent duplicative work"); *Yamagata Enters., Inc. v. Gulf Ins. Co.*,
No. 207CV00644HDMGWF, 2008 WL 11388741, at *2 (D. Nev. Feb. 4, 2008) (noting efficiencies
of discovery on coverage and bad faith to proceed at same time even if issues are bifurcated for
trial); *Drennan v. Maryland Cas. Co.*, 366 F. Supp. 2d 1002, 1008 (D. Nev. 2005) ("Joint discovery
is more convenient to the parties and would further judicial economy. With joint discovery, the
parties will be better informed with regard to settlement efforts.").

objections, AFM responds that it will produce non-privileged, non-proprietary responsive documents.[7]

<u>Analysis</u>: The claim file and all documents concerning Treasure Island's Claim (whether inside or outside of the "central" claim file) are clearly relevant, discoverable, and should be produced. "The 'case law in this District [makes clear] that information in a claims file is relevant and discoverable to the insurer's decision to deny benefits and rationale under a breach of contract claim.'" *Wood v. GEICO Cas. Co.*, No. 216CV00806GMNNJK, 2016 WL 6069928, at *1 (D. Nev. Oct. 14, 2016) (*quoting Flonnes v. Prop. & Cas. Co. of Hartford*, No. 2:12-CV-01065-APG-CWH, 2013 WL 5408659, at *2 (D. Nev. Sept. 25, 2013)); *Martinez v. James River Ins. Co.*, No. 219CV01646RFBNJK, 2020 WL 1975371, at *4 (D. Nev. Apr. 24, 2020). Documents relating to AFM's investigation, or lack thereof, and its coverage analyses and actions related thereto go directly to Treasure Island's claims for breach of contract and bad faith. The claim file is also directly relevant to Treasure Island's bad-faith claim. *See Renfrow v. Redwood Fire & Cas. Ins. Co.*, 288 F.R.D. 514, 521 (D. Nev. 2013) (granting plaintiff's motion to compel production of insurance claim file as relevant to bad faith claim). There is no reason to excuse or limit the production of the claim file. The protective order alleviates concerns about proprietary information. The information is not privileged, because adjusting a claim is AFM's regular business and does not involve the seeking of or provision legal advice. And, there are no work-product issues because at the time of adjustment there was no threatened or pending litigation.

AFM's unilateral decision to search 1-2 individual custodians and the "central online files" is also improper. In its Initial Disclosures, AFM identified five other individuals at the Company who were involved in denying the claim: Jason Wing, Jeffrey Casillas, Maxine Walker, Brian

---

[7] *See* RFPDs Nos. 1-3, 15, 19-21, and 46 and corresponding Responses.

Cook, and John Baker. Treasure Island has identified three more in its Initial Disclosures: Richard Judd, Riane Ruegger, and Steven Leider (all of whom were involved with the adjuster's letters), and will supplement to add to more: William Kropp and Marika Block (who received the initial claim). AFM wants to be excused from searching the additional custodians because, it says, all documents are contained in the "central claim file." The assertion proves too much. To the extent AFM asserts that the documents the new searches capture are entirely and without exception duplicative of the "central claim file," that remains to be seen, and every competent discovery platform can easily weed out true duplicates without human intervention. To the extent the objection is based on burdensomeness, this is unsubstantiated. Moreover, Treasure Island's losses as of June exceeded $40M. It is not too much to ask AFM, who issued the Policy in exchange for a substantial premium, to comply with its discovery obligations by searching the relevant custodians, just as all civil litigants are required to do. AFM is afraid not of duplication or burden but of what it might find.

Requested Order: This Court should order AFM to identify all individuals (by name, job title, and year(s) of employment) who were involved in handling Treasure Island's Claim, and to search for and produce from all devices (computers, phones, tablets and so forth) and sources of documents and data (including emails, hard drives, and paper files) for these same individuals. That includes searching all devices and sources of documents and data of Wing, Casillas, Walker, Cook, Baker, Judd, Rueger, Leider, Kropp, and Block as a starting point.

(3) **The "Underwriting File"**

**REQUEST NO. 10:** Your entire underwriting file for the Policy.

**AMENDED RESPONSE TO REQUEST NO. 10:** AFM objects to this request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. Without waiving these objections, AFM responds that it will ~~make a reasonable search for the requested~~

~~documents and will~~ produce non-privileged, non-proprietary ~~responsive documents~~ ~~pertaining to the relevant policy subject to a Stipulation and~~ <u>documents from its central online underwriting file and the hard copies maintained by the underwriter subject to the</u> Protective Order.[8]

<u>Analysis</u>: The underwriting file and all documents concerning underwriting of Treasure Island's claim (whether inside or outside of the "central" file) are clearly relevant and discoverable and should be produced by AFM. The Underwriting file is relevant to Treasure Island's claims because it will provide evidence of AFM's intent and expectation (1) that the Communicable Disease coverages are not mutually exclusive of other coverages triggered by Communicable Disease—a covered cause of loss, and (2) that the Policy's Contamination Exclusion, which makes no mention of Communicable Disease, was never intended to negate coverage for Communicable Disease loss under any section of the Policy. Furthermore, underwriting files, as well as policy drafting history, are relevant and, therefore, discoverable in claims for bad faith and breach of contract, because they pertain to what the coverage included and whether the insurer failed to meet its obligation. These documents may reveal whether AFM has taken a coverage position inconsistent with its internal drafting history of the policy language. *See Renfrow*, 288 F.R.D. at 521; *Int'l Game Tech. v. Illinois Nat'l Ins. Co.*, No. 216CV02792APGNJK, 2017 WL 5505039, at *2 (D. Nev. Nov. 16, 2017) (rejecting defendant's argument that underwriting information was "irrelevant as extrinsic information" and holding underwriting files and drafting history relevant and discoverable to breach of contract and bad-faith claims where defendant alleged that underlying claim fell outside policy). There is no reason to prohibit or limit their production. Proprietary information is protected by the Protective Order. Any alleged privilege and/or work product should be identified on a privilege log so that Treasure Island can review and challenge as

---

[8] *See* RFPDs Nos. 3 and 11-12 and corresponding Responses.

appropriate. AFM's proposal to search one custodian and the "central online underwriting file" is inadequate.

Requested Order: This Court should order AFM to identify all individuals (by name, job title, and year(s) of employment) involved in the underwriting of Treasure Island's Policy (a list which, presumably will include Kropp and Block), and to search for and produce from all devices (computers, phones, tablets, and so forth) and sources of documents and data (including emails, hard drives, and paper files) for these same individuals.

(4) **Claim Manual(s) and Underwriting Manual(s)**

**REQUEST NO. 6:** All claim manuals, policies and/or guidelines (including all drafts of the same) concerning AFM's property insurance policies including but not limited to the "standard FM Global Advantage" and/or the "AFM proVision" form property insurance policy(ies).

**AMENDED RESPONSE TO REQUEST NO. 6:** AFM objects to this request on the grounds that it is overly broad and seeks documents that are not reasonably calculated to lead to the discovery of admissible evidence, particularly as the request pertains to a policy form that is not at issue in this case. As such, this request is disproportionate to the probative value of the documents requested. AFM also objects that it seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. Without waiving these objections, AFM responds that it will produce ~~non-privileged, non-proprietary responsive documents~~ sections from the Claims Procedures which are applicable to the Claim, subject to ~~the~~ Protective Order.

**REQUEST NO. 13:** All underwriting manuals, instructions, and/or guidelines in force during the period January 1, 2018 and present, that are applicable to the underwriting of the Policy.

**AMENDED RESPONSE TO REQUEST NO. 13:** AFM objects to this request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. Without waiving these objections, AFM responds that it will ~~make a reasonable search for underwriting guidelines~~ produce Underwriting Requirements applicable to this Policy ~~and will~~

1   ~~produce non-privileged, non-proprietary responsive documents~~ subject to ~~an~~
2   ~~appropriate Stipulation and~~ the Protective Order.[9]

3   <u>Analysis</u>: Any Claim Manual is relevant and discoverable and should be produced by AFM.

4   A comparison of how AFM *should* have handled Treasure Island's claim *per its own manual*

5   against how AFM *did in fact* handle the claim goes directly to Treasure Island's claims for breach

6   of contract and bad faith. Claims manuals and claims-handling information are relevant in breach

7   of insurance contract cases. *Int'l Game Tech.*, 2017 WL 5505039, at *4 (*citing Renfrow*, 288 F.R.D.

8   at 521) (holding that claims handling manuals or guidelines are relevant "because such

9   documentation could reveal . . . if general claims handling guidelines are inconsistent with the

10  requirements of Plaintiff's policy"). Where claims manuals are relevant to a breach of contract

11  claim, underwriting manuals are also relevant to that claim. *Id.* at *5 (*citing Phillips v. Clark Cty.

12  *Sch. Dist.*, No. 2:10-cv-02068-GMN-GWF, 2012 WL 135705, at *12 (D. Nev. Jan. 18, 2012)

13  (finding relevant guidelines or memorandum relating to claims adjusting, policies, procedural or

14  operational manuals, and procedures and guidelines for reviewing and determining claims for

15  coverage); *Olin Corp. v. Cont'l Cas. Co.*, No. 2:10-CV-00623-GMN, 2011 WL 3847140, at *2 (D.

16  Nev. Aug. 30, 2011) (finding relevant "general company-wide manuals, guidelines, [and] claims-

17  handling procedures")). There is no reason to prohibit or limit complete production. AFM's

18  suggestion that it can carve up the manual and produce only "sections from the Claims Procedures

19  which are applicable to the Claim" is inappropriate and not consonant with AFM's discovery

20  obligations. It is not for AFM to unilaterally decide which sections are "applicable." To the extent

21  portions are not relevant, the protective order will protect them. The same holds for AFM's

22  assertion that it can produce just the "Underwriting Requirements applicable to this Policy." Given

---

[9] *See* RFPD No. 17 and corresponding Response

the protections in place, AFM's refusal to produce these documents in full but instead to go through the trouble of slicing them up and suppressing portions is itself suggestive that they have something to hide.[10]

Requested Order: This Court should order AFM to produce the Claim Manual(s) and Underwriting Manual(s) in full.

(5) **Submissions to state regulators regarding the Contamination Exclusion and the Communicable Disease coverages**

**REQUEST NO. 31:** All documents concerning submissions to state regulators regarding the exclusion referenced in Exhibit J purporting to exclude "contamination." [Exhibit J is AFM's adjuster's 4/16/20 letter (see Dkt. 2-10).]

**AMENDED RESPONSE TO REQUEST NO. 31:** AFM objects to this request on the grounds that it is overly broad, vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, AFM responds that it will ~~make a reasonable search~~ for produce documents concerning submissions to the Nevada Division of Insurance.

**REQUEST NO. 32:** All documents concerning submissions to state regulators regarding the communicable disease coverages in any AFM policy.

**AMENDED RESPONSE TO REQUEST NO. 32:** AFM objects to this request on the grounds that it is overly broad, vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, AFM responds that it will ~~make a reasonable search for~~ produce concerning submissions to the Nevada Division of Insurance.

Analysis: These documents are relevant because, if AFM is taking a position now regarding the meaning of its Contamination Exclusion and/or Communicable Disease Coverage that is contrary to what it represented to regulators, that goes directly to AFM's bad faith. AFM's unilateral decision to confine its production to "submissions to the Nevada Division of Insurance" is inappropriate. The positions that AFM took to any regulator, just not Nevada's, are relevant.

---

[10] Notwithstanding AFM's representations, Treasure Island has been unable to locate any portions of AFM's claims or underwriting manuals in the documents produced to date.

AFM has demonstrated no legitimate overburden. These are two specific provisions in a 44-page policy.

Requested Order: This Court should order AFM to produce these submissions.

(6) **Drafts of the Policy**

**REQUEST NO. 9:** All drafts of the Policy, including any terms, definitions, provisions, exclusions or endorsements to the Policy.

**AMENDED RESPONSE TO REQUEST NO. 9:** AFM objects to this request on the grounds that it seeks documents that are not relevant to this action and not reasonably calculated to lead to the discovery of admissible evidence. As such, this request is disproportionate to the probative value of the documents requested. AFM objects to this request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. Without waiving these objections, AFM ~~will conduct a reasonable search for~~ responds that it has no documents that are responsive to this request.

Analysis: AFM claims there are "no documents that are responsive to this request." That seems highly unlikely. The policy language has changed over the years, and it is inconceivable that AFM would have instituted these changes without any drafting history. If AFM is taking a positon that is consistent with a draft but seemingly inconsistent with the final version, that is certainly relevant to this case. And, to the extent there is ambiguity, the drafts could help elucidate meaning. The discoverability of these materials has long been recognized, and their production routinely ordered. *See Rhone-Poulenc Rorer, Inc. vs. Home Indem. Co*., No. CIV. A. 88-9752, 1991 WL 78200, at *1 (E.D. Pa. May 7, 1991), *modified*, 1991 WL 111040 (June 17, 1991) ("The drafting history of the policies, the insurer's participation in organizations involved in the drafting and their adoption of standard form language promulgated by these organizations is relevant to the insurers' intent concerning the policies in question.").

Requested Order: This Court should order AFM to perform (and document under oath its performance of) an appropriate search for drafts of the policy at issue, and produce the results of this search.

(7) **AFM's claims to its insurer(s) or reinsurer(s)**

**REQUEST NO. 30:** All documents concerning AFM's notice or tender of any claim to any insurer or reinsurer for insurance coverage related to COVID-19 and/or SARS-CoV-2.

**AMENDED RESPONSE TO REQUEST NO. 30:** AFM objects to this request on the grounds that it is overly broad, vague and ambiguous, and burdensome in proportion to the probative value of the documents requested and not reasonably calculated to lead to the discovery of admissible evidence as reinsurance is irrelevant to Treasure Island's claims for coverage in this action. AFM also objects that this interrogatory seeks information protected from disclosure by the attorney-client and/or work product privileges. AFM objects further that it seeks information that is considered proprietary and trade secret. To the extent this request seeks documents about claims submitted by insureds other than Treasure Island, AFM incorporates by reference its response to Request No. 26. Without waiving these objections AFM responds that it has not made a notice or tender of the Treasure Island claim to any insurer or reinsurer.

Analysis: This information is clearly relevant and discoverable and should be produced by AFM. The reinsurance agreements themselves are clearly discoverable. Federal Rule of Civil Procedure 26(a)(1)(A)(iv) in fact *requires* AFM to disclose "for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." So are the communications. AFM has apparently (per the Talking Points) determined that COVID-19 does not cause physical loss or damage. If AFM has taken a different position with its own insurance or reinsurance carriers, including by putting them on notice of a potential claim, that is certainly relevant, and therefore, discoverable. *See Progressive Cas. Ins. Co. v. F.D.I.C.*, No. 2:12-CV-00665-KJD, 2013 WL 5947783, at *10 (D. Nev. Nov. 1, 2013), order clarified, No. 2:12-CV-00665-KJD, 2014 WL 994629 (D. Nev. Mar. 13, 2014) (finding reinsurance

communications relevant to whether the insurer's interpretations of the policy provisions at issue were consistent or inconsistent with positions taken vis-a-vis its policy holders); *Olin*, 2011 WL 3847140, at *5 (D. Nev. Aug. 30, 2011) (declining to issue protective order for defendants' reinsurance information). There is no reason to prohibit or limit production. As with the other requests, the protective order protects any proprietary information. AFM's statement that "it has not made a notice or tender of the Treasure Island claim to any insurer or reinsurer" is suspect and incomplete. While AFM may not have made a claim under its facultative policy (specific to Treasure Island), it does not indicate whether it did so under any treaty policy (which cover entire books of business).

Requested Order: This Court should order AFM to respond concerning its treaty policy(ies), and to produce any responsive documents.

(8) **Other insureds and claims**

Analysis: There are a number of these requests (see, e.g., Nos. 16, 26-29). In essence, they seek documents concerning claims that AFM has denied because of asserted absence of physical loss or damage, concerning claims for coverage for COVID-19 and/or SARS-CoV-2 and related issues. This information is clearly relevant and discoverable and should be produced. Treasure Island is entitled to know how AFM has historically interpreted and applied the Policy language in other similar claims and, in particular, the "ALL RISK OF PHYISICAL LOSS OR DAMAGE" provision, the Contamination Exclusion and Communicable Disease Coverage, and whether AFM is doing the same here. One of AFM's threshold objections is that these requests "seek[] documents about other insureds protected from disclosure by the Regulations issued by the Nevada Division of Insurance." No regulation prohibits production, and AFM has never cited one. AFM has cited Nev. Admin. Code § 679B.675, but those regulations expressly except from their scope disclosure "[t]o the extent specifically permitted or required pursuant to other provisions of law." Nev. Admin.

Code § 679B.874(*l*); *see id*. § 679B.874(r) (permitting disclosure to comply with federal, state, or local laws). The Federal Rules of Civil Procedure and local rules, of course, are "laws of the United States." *Werbicky v. Green Tree Servicing, LLC*, No. 2:12-CV-01567-JAD, 2015 WL 1806857, at *5 (D. Nev. Apr. 21, 2015); 4 A.N. Steinman, Federal Practice & Procedure (Wright & Miller) § 1030 (4th ed. Oct. 2020 update). No regulation prevents AFM from complying with valid document requests, much less an order from this Court, particularly where a robust protective order governs, as is the case here.

Requested Order: This Court should strike AFM's objection in this regard. Treasure Island will then work with AFM to reach an agreement re: narrowing the scope of its requests.

(9) **Other cases involving the form policy and claims for communicable disease coverage**

> **REQUEST NO. 18:** Any pleadings, motions, legal memoranda, or other court papers filed by or on behalf of AFM in any legal action from January 1, 2015 through the present, which address the meaning, application and/or construction of the AFM proVision policy form as applied to claims involving the actual or potential presence of communicable disease.

> **AMENDED RESPONSE TO REQUEST NO. 18:** AFM objects to this request on the grounds that it is overly broad, burdensome and oppressive in proportion to the probative value of the documents requested and that it seeks documents that are not relevant to the subject matter of this suit and not reasonably calculated to lead to the discovery of admissible evidence. In addition, AFM's position in other litigation is only relevant, if at all, to whether it acted in bad faith toward Treasure Island. Inasmuch as Treasure Island has yet to demonstrate it even has a claim, let alone a wrongful withholding of policy benefits, discovery regarding its bad faith claim is premature and disproportionate to the burden to AFM of such discovery. AFM also objects to this request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. AFM further objects that this overly broad request seeks documents for a period of over five and one-half years which involves searching through thousands of pages of documents. Any publicly filed documents are available to plaintiff and its counsel through any number of computer search engines.

Analysis: If AFM took one position in one case and is now taking a contrary positon here, that is certainly relevant to AFM's bad faith. AFM objects in part on the grounds that "[a]ny

publicly filed documents are available to plaintiff and its counsel through any number of computer search engines." That is not true, but it is not a valid objection in any event. *See Orleman v. Jumpking, Inc.*, No. CIV. A. 99-2522-CM, 2000 WL 1114849, at *5 (D. Kan. July 11, 2000) ("The rules of discovery do not permit parties to withhold material because the opponent either has or could discover it on their own."); see also S. Baicker-McKee, Federal Civil Rules Handbook (2020 ed.) ("The fact that documents are available from another source, such as public records, is not, by itself, a valid basis for objecting or refusing to produce such documents if they are within the possession, custody, or control of the responding party."). In order to remedy the objection that the request is overly broad, Treasure Island agrees to limit its request to the names of cases since January 1, 2016.

Requested Order: This Court should order AFM to produce a list of the cases for this timeframe.

Date:  October 29, 2020

/s/ Renee F. Finch
Renee M. Finch
Nevada State Bar 13118
Messner Reeves LLP
8945 W. Russell Road, Suite 300
Las Vegas, NV 89148
Phone: (702) 363-5100
Email: rfinch@messner.com

Michael S. Levine*
mlevine@hunton.com
Phone: (202) 955-1500
Kevin V. Small*
ksmall@hunton.com
Phone: (212) 309-1226
Harry L. Manion III*
hmanion@hunton.com
Christopher J. Cunio*

ccunio@hunton.com
Phone: (617) 648-2800
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037

***Attorneys for Plaintiff, Treasure Island, LLC***

*Admitted pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on October 29, 2020, a true and correct copy of **Plaintiff Treasure Island LLC's Motion to Compel** was electronically filed with the Clerk of Court via the Court's CM/ECF System and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

This 29th day of October, 2020.

/s/ Christopher J. Cunio
Christopher J. Cunio *
HUNTON ANDREWS KURTH LLP
ccunio@hunton.com
Phone: (617) 248-2800

*Admitted *pro hac vice*

21