Renee M. Finch (NSBN 13118)
MESSNER REEVES LLP
8945 W. Russell Road, Suite 300
Las Vegas, Nevada 89148
Phone: (702) 363-5100
Email: *rfinch@messner.com*

Michael S. Levine (admitted *pro hac vice*)
Harry L. Manion, III (admitted *pro hac vice*)
Christopher Cunio (admitted *pro hac vice*)
Katharine A. Dennis (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Email: *mlevine@huntonak.com*
Email: *hmanion@huntonak.com*
Email: *ccunio@huntonak.com*
Email: *kdennis@huntonak.com*

*Attorneys for Plaintiff, Treasure Island, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TREASURE ISLAND, LLC, <br><br> *Plaintiff*, <br><br> vs. <br><br> AFFILIATED FM INSURANCE CO., <br><br> *Defendant*. | Case No.: 2:20-cv-00965-JCM-EJY <br><br> **TREASURE ISLAND, LLC'S, THIRD MOTION TO COMPEL** <br><br> **ORAL ARGUMENT REQUESTED** |

Plaintiff Treasure Island, LLC ("Treasure Island") files this Third Motion to Compel Defendant Affiliated FM Insurance Co. ("AFM") to comply with discovery rules and the ESI Order in this litigation by producing relevant documents and information.[1]

---

[1] Treasure Island detailed the entire factual background and procedural history in connection with its First Motion to Compel (ECF Nos. 40, 46) and in the and in the Declaration of Christopher J. Cunio (ECF No. 40-1) filed in support thereof. To avoid repetition, Treasure Island summarizes

Treasure Island served its First Set of Requests for Production of Documents on August 10, 2020. *See Declaration of Michael S. Levine in Support of Treasure Island's Third Motion to Compel*, attached hereto as Exhibit 1.  More than seven months later, AFM continues to disregard its discovery obligations under the Federal Rules as well as the Joint Discovery Plan (ECF No. 33) and ESI Orders (ECF No. 36) in this litigation.  Simply put, AFM refuses even to search for documents responsive to Treasure Island's requests, despite overwhelming evidence as to both the existence of the documents, and their specific location.  AFM's continued insistence that its extremely narrow search (limited to two custodians, two central files, and one hard copy file) is certain to have captured all potentially relevant documents is belied by the testimony of AFM's own witnesses.  Indeed, the testimony further undercuts AFM's protests of "overbreadth," as **AFM's own witnesses identified** the **specific custodians and locations of documents** responsive to Treasure Island's Request—yet AFM refuses to collect from these obvious sources.  In light of this new information, Treasure Island has repeatedly attempted to confer with AFM in good faith on topics such as "identification of custodians of relevant ESI, potentially relevant data sources, [and] search methodologies" (as specifically required by the ESI Order)—including proposing a finite list of specific custodians and document locations—to no avail as AFM won't budge.[2]  Despite the words of its own witnesses confirming the existence and location of responsive documents, AFM continues to flatly refuse to perform a single additional search of these sources, instead asking Treasure Island to take AFM's word for it that nothing else exists.  But how can AFM even make such a representation **when it has not searched the custodians or locations**?  Even if it did, AFM's word is simply not enough—not under the Rules, not under the discovery

---

those facts and history herein, supplemented only to the extent pertinent to this Third Motion to Compel.

[2] Treasure Island's attempts to meet and confer are detailed in Exhibit 1.

orders in this litigation, and certainly not for Treasure Island, who has already been the victim of AFM's bad faith once.

I. **REQUESTS NOS. 1, 2, 15, and 46**

Requests Nos. 1, 2, 15, and 46 specifically seek documents concerning Treasure Island's Claim **that are not contained within the [statutory] claim file**. AFM has produced only what it purports to be the entire claim file, which, after de-duplicating, consisted of approximately 30 documents (including communications to and from Treasure Island that Treasure Island was already in possession of). Conspicuously missing, however, are the following, all of which were identified by AFM witnesses in their depositions:

- Documents concerning AFM's purported (and legally required) "investigation" of the claim;[3]

- Documents concerning the supposed "problem" that AFM's witnesses described as occurring during the handling of Treasure Island's claim – a problem so significant that it caused escalation of the claim straight to AFM's senior management, but which is discussed **nowhere** in the claim file;

- Drafts of letters edited by claims managers and vice presidents that reside on AFM's SharePoint drive and/or OneDrive;[4]

- Form wording used as the basis for letters AFM sent to Treasure Island concerning the claim, including AFM's June 19, 2020 letter denying AFM's claim; and

- E-mails among claim managers and other personnel above the level of the first level adjuster (David Carroll).

---

[3] By contrast, AFM withheld more than 50 documents from the exact same time period on the basis of privilege (despite the fact that suit had not been filed, and there was no indication that litigation was forthcoming).

[4] Treasure Island has confirmed through its own consultants and via the Microsoft website that the default setting on SharePoint retains drafts of documents for 93 days. These drafts exist even though the user believes that drafts have been "overwritten." As Treasure Island commenced this litigation on May 28, 2020, well within 93 days of presenting its claim to AFM on March 20, 2021, all drafts and other ESI should have been protected from destruction or deletion by AFM under its litigation hold.

3

AFM insists that all documents relating to the Claim are contained in the claim file. Not true. In fact, the claim file contains **only** documents "tagged" for inclusion in that file. Thus, the claim file is one of *exclusion*, not *inclusion*. This fact is critical given AFM's position that it did not actually look for or review documents that were not "tagged" for inclusion in the claim file. Rather, AFM refuses to even search, much less confirm (as it must) whether other claim-related documents exist. AFM merely assumes, and asks Treasure Island and this Court to do the same, in the face of clear testimony demonstrating that assumption to be false. Therefore, for the reasons articulated below, Treasure Island seeks an order requiring AFM to searches the specified custodians and repositories for documents responsive to the following Requests and produce or log **all** responsive documents:

> **Request No. 1**: All documents concerning David Carroll's correspondence with Brad Anthony (General Counsel of Treasure Island), including:
> (a) AFM's April 9, 2020 letter;
> (b) AFM's April 16, 2020 letter;
> (c) AFM's June 19, 2020 letter; and,
> (d) AFM's June 19, 2020 e-mail.
>
> **Response to Request No. 1**: AFM objects to this request on the grounds that it is overly broad, vague and ambiguous and seeks documents not reasonably calculated to lead to the discovery of admissible evidence. AFM also objects that it seeks documents protected from disclosure by the attorney-client and work product privileges. Without waiving these objections, AFM responds that it will make a reasonable search for documents and will produce non-privileged responsive documents.[5]
>
> * * *
>
> **Request No. 2**: All documents concerning communications concerning Treasure Island, the Claim or the subject matter of the Complaint.
>
> **Response to Request No. 2**: AFM objects to this request on the grounds that it is overly broad, unduly burdensome in proportion to any probative value of the documents requested and seeks documents not relevant to the subject matter of this

---

[5] *See* AFM's Amended Responses to Treasure Island's First Set of Requests for Production, Ex. 1 at Ex. B.

4

suit. In addition, AFM objects that the request for documents regarding Treasure Island's allegations of bad faith are premature and disproportionate to the burden to AFM of such discovery inasmuch as Treasure Island has yet to demonstrate it even has claim, let alone a wrongful withholding of policy benefits. AFM also objects that the request seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. Without waiving these objections, AFM responds that it has searched its central electronic claim file for this claim, as well as David Carroll's emails and the electronic file he maintained for this claim. AFM has searched its central underwriting file for Treasure Island policies, including policies issued from 2009 through 2019, and hard copies of underwriting documents maintained by AFM, as well as Brian Bueche's emails and the electronic file he maintained for Treasure Island. AFM has concluded that searching additional personal computers for others employed by AFM would be unlikely to yield any additional documents and the time and effort involved in additional searches is grossly disproportionate to the probative value of the documents sought. AFM will produce non-privileged, non-proprietary responsive documents from the sources identified regarding the Claim and underwriting of the subject policy.

* * *

**Request No. 15**: All documents reflecting communications with any person concerning the Claim that are not included in your claim file for the Claim.

**Response to Request No. 15**: AFM objects to this request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. Without waiving these objections, AFM responds that it has searched its central electronic claim file for this claim, as well as David Carroll's emails and the electronic file he maintained for this claim. AFM has concluded that searching additional personal computers for others employed by AFM would be unlikely to yield any additional documents and the time and effort involved in additional searches is grossly disproportionate to the probative value of the documents sought. AFM will produce non-privileged, non-proprietary responsive documents from the sources identified above.

* * *

**Request No. 46**: All documents concerning the Claim.

**Response to Request No. 46**: AFM objects to this request on the grounds that it is overly broad, burdensome and oppressive in proportion to the probative value of the documents requested. AMF also objects that it seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in

nature. Without waiving these objections, AFM has searched its central electronic claim file for this claim, as well as David Carroll's emails and computer file for this claim. AFM has concluded that searching additional personal computers for others employed by AFM would be unlikely to yield any additional documents and the time and effort involved in additional searches is grossly disproportionate to the probative value of the documents sought. AFM responds that it will produce non-privileged, non-proprietary responsive documents from the sources identified above.

**Analysis:** As it relates to the above requests, AFM limited its search for documents responsive to Requests 1, 2, 15, and 46 to (1) AFM's "central online files," including the statutory claim file and underwriting file; (2) email files and electronic files maintained by two custodians, David Carroll (first level adjuster) and Brian Bueche (underwriter); and (3) hard copy files maintained by Brian Bueche in the Dallas office.

The testimony of AFM's witnesses confirms that additional (and likely most) documents responsive to Requests 1, 2, 15, and 46 lie outside the limited locations searched by AFM. Specifically, Mr. Carroll testified that:

███████████████████████████████████████████████████
███████████████████████████████████ (*See* Excerpts from Deposition of David Carroll, attached hereto as Exhibit 2, 62:25-65:2) (emphasis added)

███████████████████████████████████████████████████
████████████████████████ (Ex. 2, 67:13-71:5) ) (emphasis added)

███████████████████████████████████████████████████
████████ (Ex. 2, 70:50-71:23)

███████████████████████████████████████████████████
██████████████████ (Ex. 2, 95:15-25)

AFM hangs its hat on purported testimony by its witnesses that all documents related to the claim were in fact tagged for inclusion in the claim file. While this may be the company's *policy*, or their *hope* for document retention or, perhaps, their own self-serving contention in this litigation, it does not alter their own witnesses' testimony. ██████████████████

███████████████████████████████████████

██████████████ **which AFM did not search**:

███████████████████████████████ (*See* Excerpts from 30(b)(6) Deposition of Brian Cook, attached hereto as Exhibit 3, 150:19-22)

███████████████████████████████ (*See* Excerpts from Fact Deposition of Brian Cook (Day 1, 2.12.2021), attached hereto as Exhibit 4, 21:21-25:13)

███████████████████████████████ (Ex. 4, 22:3-16)

In addition, ███████████████████████████

███████████████████████████████

---

[6] Again, AFM boldly asserts this as "fact" without even having searched the documents to confirm.

7

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
   (Ex. 2, 176:7-177:12) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓ (Ex. 2, 101:1-103:4)

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 2,
8  177:25-178:15)
9  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 2, 180:12-14)
10 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
11 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 2, 306:18-307:8)

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 2, 107:7-109:7)

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and thus all are reasonably likely to have documents
20 responsive to Requests 1, 2, 15, and 46:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 3, 22:15-
22 23)
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓ (Ex. 3, 116:1-22)
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 3, 118:19-
119:7)
26 ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 4, 72:19-76:19)
28

██████████████████████████████████████████████ (Ex. 4, Dep., 78:22-80:12)

The testimony proves that not all correspondence relating to the Claim, and thus responsive to Requests 1, 2, 15, and 46, has been produced—<u>including</u> emails originating from Mr. Carroll, despite AFM's insistence to the contrary. ████████████████████████████

████████████████████████████████

(Ex. 4, 72:19-73:11).  AFM has produced no such email. ██████████████████

████████████████████████████████████████ (Ex. 4, 76:20-77:17)  Again, AFM has produced no such email.

With respect to Ms. Marino and Mr. Brunelli, although both are attorneys, it is clear that their initial assignment was to assist with the handling of Treasure Island's claim, prior to AFM's denial of coverage and prior to any anticipation of litigation.[7]  Their involvement appears to clearly have been to assist AFM's adjusters (including Mr. Carroll and Mr. Casillas) in their application of the terms of coverage to the facts of COVID-19 claims, including Treasure Island's claim.  Or, perhaps, they were not even doing that.  Regardless, these are the functions of an adjuster, not a lawyer, and documents pertaining the their role in the handling of Treasure Island's claim should be produced.[8]

████████████████████████████████████████████████████████████

██████████████████████████████ (Ex. 4, pp. 81-90)  At a minimum, a search of Mr. Cook, Mr. Brunelli, and Ms. Marino's documents would reveal the timeline of their involvement and, potentially, the reason AFM suddenly perceived a problem with Treasure Island's claim – a fact that AFM's witnesses could not answer in their deposition.

[8] AFM is not entitled to flatly refuse even to <u>search</u> custodians for relevant documents on the basis of privilege.  If AFM contends that these individuals were acting in their capacity as counsel, then AFM must perform the required searches for relevant documents and include any relevant documents on its privilege log.

AFM's own testimony makes abundantly clear that AFM's search for documents responsive to Requests 1, 2, 15, and 46 should have included numerous additional repositories and custodians. Nonetheless, AFM still refuses to search these individuals' documents. AFM did not even search the individuals that AFM itself identified on its own Initial Disclosures as persons with information relating to claims and defenses in this litigation. AFM premises its refusal on the assumption that all documents regarding the Claim went through Mr. Carroll or were placed in the statutory claim file—an assumption that ███████████████████████████████

███████████████████████████

**Requested Order:** Treasure Island asks this Court to order AFM to search the following custodians and repositories for documents responsive to Requests Nos. 1, 2, 15, and 46:

Custodians:

1. Jason Wing (identified in AFM's Initial Disclosures; involvement confirmed by testimony)
2. Jeffrey Casillas (identified in AFM's Initial Disclosures; involvement confirmed by testimony)
3. Maxine Walker (identified in AFM's Initial Disclosures; involvement confirmed by testimony)
4. Brian Cook (identified in AFM's Initial Disclosures; involvement confirmed by testimony)
5. William Kropp (received the initial claim)
6. Marika Block (received the initial claim)
7. Robert Brunelli (involved in adjustment/handling of the claim)
8. Alexsa Marino (involved in adjustment/handling of the claim)
9. Doug Backes (involved in adjustment/handling of the claim)

Repositories:

1. Laptops of identified custodians
2. Desktops of identified custodians
3. Network servers
4. Cloud servers
5. Cell Phones of identified custodians
6. PDAs/iPads/Tablets of identified custodians
7. Offices of identified custodians

8. AFM's SharePoint/OneDrive[9]
9. Hard copy files from identified custodians
10. Outlook mailboxes and folders for identified custodians

## II. REQUESTS NOS. 34, 35, 36, 37, 38, 39

**Request No. 34**: All documents concerning surface testing for the presence of COVID-19.

**Response to Request No. 34**: AFM objects to this request on the grounds that it is overly broad, vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, AFM responds that it has no documents surface testing for the presence of COVID-19.

* * *

**Request No. 35**: All documents concerning surface transmission of COVID-19.

**Response to Request No. 35**: AFM objects to this request on the grounds that it is overly broad, vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, AFM responds that it has no documents concerning surface transmission of COVID-19.

* * *

**Request No. 36**: All documents concerning air testing (including for droplets greater than and less than 5 microns) for the presence of COVID-19.

**Response to Request No. 36**: AFM objects to this request on the grounds that it is overly broad, vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, AFM responds that it has no documents concerning air testing (including for droplets greater than and less than 5 microns) for the presence of COVID-19.

* * *

**Request No. 37**: All documents concerning airborne transmission of COVID-19.

**Response to Request No. 37**: AFM objects to this request on the grounds that it is overly broad, vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, AFM responds that it has no documents concerning airborne transmission of COVID-19.

---

[9] *See* Section V, *infra*.

11

\* \* \*

**Request No. 38**: All documents concerning testing of people for the presence of COVID-19.

**Response to Request No. 38**: AFM objects to this request on the grounds that it is overly broad, vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, AFM responds that it has no documents concerning testing of people for the presence of COVID-19.

\* \* \*

**Request No. 39**: All documents concerning person-to-person transmission of COVID-19.

**Response to Request No. 39**: AFM objects to this request on the grounds that it is overly broad, vague and ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objections, AFM responds that it has no documents concerning person-to-person transmission of COVID-19.

**Analysis:** AFM's documents regarding *transmission* of COVID-19 are relevant because they go to the heart of a primary factual issue in this case: how COVID-19/SARS-CoV-2 is transmitted through air and surfaces, how it physically impacts and changes/alters those mediums (by changing the physical composition of the air and/or by changing the physical character of surfaces), and thus, whether that constitutes "physical loss or damage" under the Policy. What AFM knew about this destructive process and when AFM knew it is critical to multiple issues central to this litigation including, among others:

- Whether AFM had any basis for the positions taken in its Talking Points when drafted in January 2020;

- Whether AFM had any basis for its manner of investigation of Treasure Island's claim;

- Whether AFM had an understanding of how COVID-19 causes tangible alteration to property by physically altering the composition of air and physically altering the character of surfaces;

Case 2:20-cv-00965-JCM-EJY   Document 89   Filed 03/22/21   Page 13 of 19

AFM's documents regarding *testing* are also relevant because one AFM's touted defenses is that Treasure Island does not have test results for surfaces and/or humans for the pre-closure time period (prior to March 18, 2020).  The fact is (and what AFM's documents would show) is that AFM's defense is a red-herring – there were no commercially available test kits for either surfaces or humans during that time period.  Upon information and belief, AFM knew that was the case, yet AFM insisted that Treasure Island produce test results, knowing that would discourage Treasure Island (and presumably other insureds) from making a claim.[10]

AFM claims that it has "no documents" responsive to any of these Requests.  Yet again, the testimony belies that claim, ███████████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████████████████, asserting attorney-client and work product privileges. (*See* Excerpt from Deposition of Dr. Mark Roberts, attached hereto as Exhibit 5, at 24:17-29:8). This instruction, and the withholding of any related documents, are inappropriate, for the reasons below.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

███████████████ (Ex. 3, 97:20-100:4). ██████████
████████████████████████████████████████████

---

[10] Treasure Island will prove actual presence of COVID-19/SARS-CoV-2 prior to March 18, 2020 through epidemiological analysis and other direct and circumstantial evidence.

13

██████████████████████████████████████████

██████████████ (Ex. 3, 102:3-103:12). ████████████

████████████████████████████████████████

████████████ (Ex. 4, 52:3-55:13).

████████████████████████████████████████

████████████████████████████ (Ex. 3, 101:8-102:2)  Any related documents or communications are responsive to Request No. 35 and are <u>not</u> privileged, as they are not communications between a lawyer and his client for the purpose of obtaining legal advice. ████████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Ex. 3, 103:18-104:8)  This information is discoverable.

**Requested Order:** Treasure Island asks this Court to order AFM to produce all documents

III. **REQUEST NO. 17**

**Request No. 17**: All documents concerning AFM's practices, policies, requirements, and procedures in effect from January 1, 2020 to the present, regarding the handling, adjustment, investigation, and/or processing of claims based on the actual or potential presence of communicable disease including but not limited to claims manuals, claims handling manuals, instructional manuals, guidelines and/or policy manuals applicable to claims involving the actual or potential presence of communicable disease.

**Response to Request No. 17**: AFM objects to this request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege. In addition, AFM's procedures regarding the processing of claims for communicable disease is relevant, if at all, to whether it acted in bad faith toward Treasure Island. Inasmuch as Treasure Island has yet to demonstrate it even has a claim, let alone a wrongful withholding of policy benefits, discovery regarding its bad faith claim is premature and disproportionate to the burden to AFM of such discovery. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. Without waiving these objections, AFM responds that other than Exhibit H attached to the complaint, AFM has no documents responsive to this request.

**Analysis:** Based on the testimony cited and arguments presented in Section III *supra*, Treasure Island believes there to be additional documents responsive to Request No. 17. First, the

---

[11] Again, AFM asserts privilege and/or work product, but has not even provided a privilege log containing documents ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

responsive to Request No. 17 which seeks documents concerning handling and adjustment of claims relating to communicable disease.

**Requested Order:** Treasure Island reiterates its Requested Order in Section II, *supra*.

IV.     **REQUEST NOS. 20 and 21**

**Request No. 20**: All documents concerning any investigation, analysis, or evaluation that AFM conducted in connection with any claim under made the Policy or any predecessor policy.

**Response to Request No. 20**: AFM incorporates by reference its response to Request No. 19. [AFM's Response to Request No. 19 reads: AFM objects to this request on the grounds that it seeks documents that are not relevant to the subject matter of this suit and not reasonably calculated to lead to the discovery of admissible evidence. AFM also objects that this request is burdensome and oppressive in proportion to the probative value of the documents requested. AFM objects further to this request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. Without waiving the foregoing objections, AFM has made a reasonable search for documents responsive to this request and will produce non-privileged, non-confidential documents.

\* \* \*

**Request No. 21**: All documents reviewed, relied upon or created in connection with AFM's decision not to make payment in response to the Claim.

**Response to Request No. 21**: AFM objects to this request on the grounds that it seeks documents protected from disclosure by the attorney-client privilege. AFM further objects to this request on the grounds that it seeks documents which are confidential and proprietary in nature. Without waiving these objections, AFM responds that it has searched its central electronic claim file for this claim, as well as David Carroll's emails and the electronic file he maintained for this claim. AFM has concluded that searching additional personal computers for others employed by AFM would be unlikely to yield any additional documents and the time and effort involved in additional searches is grossly disproportionate to the probative value of the documents sought. AFM will produce non-privileged, non-proprietary responsive documents from the sources identified above.

**Analysis:** Based on the testimony cited and arguments presented in Sections I, II, and III *supra*, Treasure Island believes there to be additional documents responsive to Requests Nos. 20

1  and 21.

9  **Requested Order:** Treasure Island reiterates its Request Orders in Sections I, II, and III
10 *supra*.
11 **V.    SharePoint/Document Preservation**

However, it is not sufficient for AFM to rely on layperson understanding of AFM's electronic document management systems for purposes of complying with its discovery obligations. In fact, AFM's layperson testimony is contradicted by information publically available from Microsoft, the manufacturer of the SharePoint software. According to Microsoft, versions are created in the following situations:

- When a file is uploaded that has the same name as an existing file.
- When the properties of a list item or file are changed.

- When an Office document is opened and saved. After a document is opened again, a new version will be created after an edit is saved.

- Periodically, when editing and saving Office documents. Not all edits and saves create new versions. When saving edits frequently, for example, each new version captures a point in time rather than each individual edit. This is common when autosave is enabled.

- During co-authoring of a document, when a different user begins working on the document or when a user clicks save to upload changes to the library.[13]

Per Microsoft, then, SharePoint would have created a new document version each time a new user began to work on the document. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The default setting on SharePoint retains 100 versions of each document.[14] Thus, these drafts exist (or should exist, per the required document preservation) within SharePoint, and Treasure Island is entitled to review them. Further, even if AFM's employees happened to delete prior versions, SharePoint (by default) retains documents in its Recycle Bin for 93 days after deletion.[15] This litigation was filed on May 28, 2020. At a minimum, all relevant documents should have been preserved as of that date—which was only 80 days after Treasure Island notified AFM of its Claim. Thus, AFM should have preserved, and Treasure Island is entitled to review, any drafts or versions of relevant documents that existed as of that date—even if they were sitting in the SharePoint Recycling Bin. To the extent AFM did not preserve those documents, spoliation sanctions may be warranted.

---

[13] *See* "How versioning works in lists and libraries," Microsoft Support, available at https://support.microsoft.com/en-us/office/how-versioning-works-in-lists-and-libraries-0f6cd105-974f-44a4-aadb-43ac5bdfd247?ui=en-us&rs=en-us&ad=us (accessed March 19, 2021)

[14] *Id.*

[15] *See* "Restore items in the recycle bin that were deleted from SharePoint or Teams," Microsoft Support, available at https://support.microsoft.com/en-us/office/restore-items-in-the-recycle-bin-that-were-deleted-from-sharepoint-or-teams-6df466b6-55f2-4898-8d6e-c0dff851a0be (accessed March 19, 2021)

**Requested Order:** Treasure Island asks this Court to order AFM to search its SharePoint drive for documents responsive to Requests Nos. 1, 2, 15, 17, 20, 21, 34-39, and 46.

Date: March 22, 2021

*/s/ Renee M. Finch*
Renee M. Finch
Nevada State Bar 13118
MESSNER REEVES LLP
8945 W. Russell Road, Suite 300
Las Vegas, NV 89148
Phone: (702) 363-5100
Email: rfinch@messner.com

**Attorneys for Plaintiff, Treasure Island, LLC**

Respectfully submitted,

Michael S. Levine*
mlevine@huntonak.com
Harry L. Manion III*
hmanion@huntonak.com
Christopher J. Cunio*
ccunio@huntonak.com
Katharine A. Dennis*
kdennis@huntonak.com
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave. NW
Washington, DC 20037
Phone: (202) 955-1500

*Admitted *pro hac vice*

### CERTIFICATE OF SERVICE

The undersigned counsel herby certifies that on March 22, 2021, a true and correct copy of Treasure Island, LLC's Third Motion to Compel was electronically filed with the Clerk of the Court via the Court's CM/EMF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing.

This 22nd day of March, 2021.

*/s/ Renee M. Finch*
Renee M. Finch
MESSNER REEVES LLP
Phone: (702) 363-5100
Email: rfinch@messner.com