Renee M. Finch (NSBN 13118)
MESSNER REEVES LLP
8945 W. Russell Road, Suite 300
Las Vegas, Nevada 89148
Phone:  (702) 363-5100
Email:  *rfinch@messner.com*

Michael S. Levine (admitted *pro hac vice*)
Harry L. Manion, III (admitted *pro hac vice*)
Christopher Cunio (admitted *pro hac vice*)
Nicholas D. Stellakis (admitted *pro hac vice*)
HUNTON ANDREWS KURTH LLP
Email: *mlevine@huntonak.com*
Email: *hmanion@huntonak.com*
Email: *ccunio@huntonak.com*
Email: *nstellakis@huntonak.com*

*Attorneys for Plaintiff, Treasure Island, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TREASURE ISLAND, LLC, | Case No.:  2:20-cv-00965-JCM-EJY |
| *Plaintiff*, | |
| vs. | |
| AFFILIATED FM INSURANCE CO., | **JOINT PRE-TRIAL ORDER** |
| *Defendant*. | |

After pretrial proceedings in this case, IT IS SO ORDERED:

1

## I.    DESCRIPTION OF ACTION

This is a breach of contract action arising out of Plaintiff Treasure Island, LLC's claim for insurance coverage under an "all risks" insurance policy sold by Affiliated FM Insurance Company ("AFM").

## II.   JURISDICTION

Statement of jurisdiction: This action was originated by the filing of a Complaint in the United States District Court for the District of Nevada, Clark County, Nevada on May 28, 2020.

## III.  ADMITTED FACTS[1]

The following facts are admitted by the Parties and require no proof:

1.  Treasure Island operates a resort and casino of the same name located at 3300 Las Vegas Boulevard South (hereinafter, "Treasure Island").

2.  AFM is an insurance company that is authorized to do business and issue insurance policies in the State of Nevada.

3.  Treasure Island purchased an "all risks" insurance policy number GS784 from Affiliated FM Insurance company (hereinafter "AFM") for the policy period of March 20, 2019 to March 20, 2020 (hereinafter the "Policy").

4.  Treasure Island paid the premium owed to AFM under the Policy.

5.  AFM drafted the Policy.

6.  Treasure Island's resort and casino, located at 3300 Las Vegas Boulevard South, Las Vegas, is an insured location under the Policy.

---

[1] The Parties reserve the right to amend and/or supplement the statement of Admitted Facts subject to the Court's ruling on AFM's Motion for Reconsideration (ECF No. 302) within a reasonable time after the Court issues its decision and order thereon.

2

7. The Policy covers Treasure Island against "ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded . . . ."

8. Per the Policy, the "Property Insured" is "Real Property in which the Insured has an insurable interest" and "Personal Property" at Treasure Island, unless excluded.

9. "Land, water or any substance in or on land" are expressly excluded from the "Property Insured."

10. The Policy covers "Business Interruption loss . . . as a direct result of physical loss or damage."

11. The Policy does not define the term "physical loss or damage."

12. With respect to its claim against AFM, Treasure Island is exercising the "Gross Earnings" option of Business Interruption Coverage.

13. Gross Earnings Business Interruption Coverage covers actual loss sustained by Treasure Island as a direct result of physical loss or damage during the "Period of Liability," as calculated according to the formula specified in the Policy.

14. The "Period of Liability" is defined as "starting from the time of physical loss or damage of the type insured" and "[e]nding when, with due diligence and dispatch . . . [t]he lost or damaged property could be repaired or replaced and made ready for production or business operations or services under the same or equivalent physical operating conditions that existed prior to the loss or damage . . . ."

15. The Policy does not define the term "repair."

16. The "Period of Liability" is extended up to 365 days "to restore the . . . business to the condition that would have existed had the loss not happened."

17. The limit on the Gross Earnings Business Interruption Coverage is $327 million.

18. The Policy requires Treasure Island to mitigate its Business Interruption loss through "[t]he use of any property or service owned or controlled by [Treasure Island]." .

19. "Communicable disease" is defined in the Policy as "disease which is . . . transmissible from human to human by direct or indirect contact with an affected individual or individual's discharges."

20. COVID-19 satisfies the Policy's definition of "Communicable disease."

21. The Policy also contains two coverage grants for Communicable Disease.

22. Each coverage grant for communicable disease is sublimited to $100,000.

23. The Policy contains an exclusion for contamination.

24. The Policy defines the term "contamination" as "any condition of property due to the actual or suspected presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogenic or pathogenic organism, bacteria, virus, disease causing or illness causing agent, fungus, mold or mildew."The Policy also contains an exclusion for "Any loss during any idle period," including "when …operations or services … would not have taken place or would have been prevented due to: a) Physical loss or damage not insured by this Policy; b) Planned or rescheduled shutdown; c) Strike or other work stoppage; d) Any other reason other than physical loss or damage insured under this Policy."

25. COVID-19 is a communicable disease.

26. SARS-CoV-2 is the causative virus of COVID-19.

27. On March 11, 2020, the World Health Organization declared the COVID-19 outbreak a global pandemic.

28. On March 13, 2020, the President of the United States declared a national emergency concerning COVID-19.

29. On March 17, 2020, the Governor of Nevada verbally ordered all gaming establishments to close as of that same day at 11:59 pm.

30. The Governor of Nevada formalized his verbal order in Directive 002 issued on March 18, 2020.

31. On March 19, 2020, AFM received Treasure Island's notice of claim under the Policy.

32. Treasure Island remained closed from March 18, 2020 through June 3, 2020 (hereinafter the "Closure Period").

33. Treasure Island reopened on June 4, 2020.

## IV.     UNCONTESTED FACTS[2]

The following facts, though not admitted, will not be contested at trial by evidence to the contrary:

1. Treasure Island consists of multiple interconnected buildings spread over 20 acres of land with approximately 2.2 million square feet of indoor space.

2. Treasure Island's buildings include a three-tower hotel with 2,884 guest rooms, a casino with over 1,200 interactive gaming attractions, and 28 food and beverage, retail, entertainment, and other staffed amenities and attractions.

3. Treasure Island employes approximately 2,500 individuals when fully operational.

4. Treasure Island is ordinarily open to the public twenty-four hours a day, seven days per week.

---

[2] The Parties reserve the right to amend and/or supplement the statement of Uncontested Facts subject to the Court's ruling on AFM's Motion for Reconsideration (ECF No. 302) within a reasonable time after the Court issues its decision and order thereon.

## V.     ISSUES OF FACT TO BE DETERMINED AT TRIAL[3]

The following are the issues of fact to be tried and determined at trial:

**A. Treasure Island—whether the following facts are true:**

1. Treasure Island consists of multiple interconnected buildings spread over 20 acres of land with approximately 2.2 million square feet of indoor space.

2. Treasure Island's buildings include a three-tower hotel with 2,884 guest rooms, a casino with over 1,200 interactive gaming attractions, and 28 food and beverage, retail, entertainment, and other staffed amenities and attractions.

3. Treasure Island employes approximately 2,500 individuals when fully operational.

4. Treasure Island is ordinarily open to the public twenty-four hours a day, seven days per week.

5. A letter accompanying the Policy signed by a Senior Vice President of AFM indicates that AFM and its parent, FM Global Group (hereinafter "FM"), were "partnering" to service the Policy.

6. Indoor air is not excluded from the "Property Insured."

7. The claim procedures manual used by AFM at the time of Treasure Island's claim contains a list of perils covered under the Policy.

8. The claim procedures manual used by AFM at the time of Treasure Island's claim includes "Communicable Disease" among the list of perils covered under the policy.

9. "Communicable Disease" is among the perils that can cause damage to property.

---

[3] The Parties reserve the right to amend and/or supplement the statement of Issues of Fact to Be Determined at Trial subject to the Court's ruling on AFM's Motion for Reconsideration (ECF No. 302) within a reasonable time after the Court issues its decision and order thereon.

10. The claim procedures manual used by AFM at the time of Treasure Island's claim assigns claim peril code 60 to the peril of "Communicable Disease."

11. The peril code description for "Communicable Disease" in the claim procedures manual is "[P]hysical loss or damage which results from the actual presence of communicable disease and the associated business interruption as defined by the policy."

12. "Communicable disease" also includes the causative virus.

13. SARS-CoV-2, the virus that causes COVID-19, satisfies the Policy's definition of "Communicable Disease."

14. A PowerPoint file prepared by FM before the COVID-19 pandemic contains a slide that defines "Physical Damage" as "Actual Substantive Change" that "[r]educes worth or usefulness. Prevents from being used as designed or intended."

15. The Policy also contains two coverage grants for communicable disease that apply without proof of physical loss or damage.

16. Each coverage grant for communicable disease without proof of physical loss or damage is sublimited to $100,000.

17. The same trigger applies to both coverages (for communicable disease without proof of physical loss or damage): communicable disease is actually present on-site, and there is (a) an order by an authorized governmental agency regulating the same or (b) a decision by an "Officer of the Insured" regarding the same.

18. When AFM added the communicable disease sublimited coverages to its form policy form, it described them as "Additional Coverages," "Coverage Extensions," "expansion in coverage," and "enhancement to [AFM's] form that nicely rounds out the overall package."

7

19. Neither of the communicable diseases sublimited coverages in the Policy indicate anywhere that they are "exceptions" or "exemptions."

20. In examining the Policy, this Court has stated that: "[t]he contamination exclusion and communicable disease provision appear to be contradictory."

21. This Court has also determined that Treasure Island's interpretation of the contamination exclusion is reasonable because "it would be meaningless (and impossible) to cover the physical removal of disease but exclude the virus that causes it."

22. Treasure Island's reasonable interpretation of the Policy is that the Policy's contamination exclusions applies to non-human-to-human communicable disease viruses.

23. This Court has also ruled that the "loss of market" or "loss of use" exclusions do not apply to Treasure Island's claim.

24. In May 2020, the U.S. Food and Drug Administration ("FDA") authorized the first antigen test for COVID-19, which is capable of identifying a current COVID-19 infection.

25. In June 2020, the FDA authorized the first polymerase chain reaction ("PCR") test for COVID-19, which is also capable of identifying a current COVID-19 infection.

26. In this case, the Court has recognized that prior to May/June 2020, there were no authorized tests available in the United States capable of identifying a current COVID-19 infection.

27. From January 1, 2020 to March 17, 2020 (hereinafter referred to as the "Pre-Closure Period"), Treasure Island had more than 320,000 registered guests and hosted approximately 7,000 visitors per day.

28. Employees with symptoms consistent COVID-19 were on-site prior to COVID-19 tests being publicly available in the United States.

29. For example, in mid-January 2020, Employee 77292, who worked in Human Resources at Treasure Island, experienced loss of taste and smell, had difficulty breathing, and experienced fatigue, body aches, nausea, and a dry cough.

30. Employee 77292's symptoms lasted approximately two weeks.

31. During the time Employee 77292 had symptoms, he worked at Treasure Island, including in the Human Resources office area, traveling throughout the property, and interacting with other employees.

32. On May 28, 2020, Employee 77292 tested positive for antibodies to the SARS-CoV-2, which indicates a prior COVID-19 infection.

33. Between experiencing his symptoms in January and this positive antibody test, he did not experience any similar symptoms.

34. Also, in mid-February 2020, Employee 405358, who worked in Housekeeping at Treasure Island, experienced loss of taste and smell, a high fever, sore through, body aches, very gad cough, congestion, nausea, extreme shortness of breath and had difficulty breathing.

35. Employee 405358's symptoms lasted approximately two weeks.

36. During the time Employee 405358 had symptoms, she worked at Treasure Island, including in the back of the house areas, traveling throughout the property, and interacting with other employees.

37. On May 28, 2020, Employee 405358 tested positive for antibodies to SARS-CoV-2, which indicates a prior COVID-19 infection.

38. Between experiencing her symptoms in February and this positive antibody test, she did not experience any similar symptoms.

39. Treasure Island's epidemiology expert, using generally accepted quantitative scientific modeling, has opined "with 99.99% certainty" that at least 100 cases of guests with COVID-19 entered Treasure Island during Pre-Closure Period.

**40.** AFM has not disclosed an epidemiologist (or other qualified expert) to provide a counter-opinion concerning the number of guests with COVID-19 at Treasure Island between January 1, 2020 and March 17, 2020.

41. Courtney Barnaby, Senior Vice President of Operations for Treasure Island, and other senior staff discussed closing Treasure Island as early as the beginning of March 2020.

42. Treasure Island made the decision to close because of management's understanding at the time that individuals with COVID-19 were on-site, and because of the physical impact COVID-19 was having at Treasure Island.

43. After Treasure Island made the decision to close, on March 17, 2020, the Governor of Nevada verbally ordered all gaming establishments to close as of that same day at 11:59 pm.

44. Prior to the Governor's order, Treasure Island was in the process of determining logistics necessary to implement its own closure, which is very complicated for a highly-regulated business like Treasure Island that had never closed before and which was typically open twenty-four hours a day, seven days a week, and did not even have locks on the main points of ingress and egress to the property.

45. On March 19, 2020, AFM received Treasure Island's notice of claim under the Policy for COVID-19 business interruption submitted by its insurance broker.

46. By letter dated March 21, 2020, AFM responded to Treasure Island's notice and classified the peril as "Communicable Disease."

47. AFM's Catastrophe Executive Loss Summary prepared by its adjuster for Treasure Island's claim also identified the claim peril as "Communicable Disease."

48. AFM has denied Treasure Island's claim for coverage under the Policy COVID-19 business interruption claim.

49. While closed, Treasure Island prepared to implement a corrective action plan to restore the property to a suitable operating condition, pursuant to which the negative impact, alteration and change to insured property (indoor air) from COVID-19 would be mitigated, isolated, and controlled.

50. During the Closure Period, Treasure Island's Business Interruption loss was $28,875,815.

51. Treasure Island reopened on June 4, 2020, and implemented the corrective action plan.

52. The corrective action plan allowed Treasure Island to use its property and services to the extent possible to reduce its Business Interruption loss.

53. Although the corrective action plan enabled Treasure Island to operate, it restricted and interfered with Treasure Island's operations in myriad ways, including by drastically reducing occupancy, and was costly.

54. Treasure Island's epidemiology expert, using generally accepted quantitative scientific modeling, has opined "with 99.99% certainty" that at least 400 cases of guests with COVID-19 entered Treasure Island during the time period from June 4, 2020 through November 30, 2020 (hereinafter the "Opening Period").

55. AFM has not disclosed an epidemiologist (or other qualified expert) to provide a counter-opinion concerning the number of guests with COVID-19 at Treasure Island between June 4, 2020 and November 30, 2020.

56. Treasure Island's business interruption loss during the Opening Period was $35,018,442.

**B. AFM**

1. Whether there was the actual not suspected presence of COVID-19 at Treasure Island during the Policy term.

2. Whether access to Treasure Island was limited, restricted, or prohibited by an order of an authorized governmental agency regulating or as a result of the actual not suspected presence of COVID-19 at Treasure Island during the Policy term.

3. Whether access to Treasure Island was limited, restricted, or prohibited by a decision of an officer of Treasure Island as a result of the actual not suspected presence of COVID-19 at Treasure Island during the Policy term.

4.  Whether Treasure Island incurred any reasonable and necessary costs for the cleanup, removal, and disposal of the actual not suspected presence of COVID-19 at Treasure Island during the Policy term.

5.  The amount of any reasonable and necessary costs for the cleanup, removal, and disposal of the actual not suspected presence of COVID-19 at Treasure Island during the Policy term.

6.  Whether Treasure Island incurred any business interruption loss caused by the actual not suspected presence of COVID-19 at Treasure Island during the Policy term.

7.  The amount of any business interruption loss sustained in one month caused by the actual not suspected presence of COVID-19 at Treasure Island during the Policy term..

8.  The number of discrete events of physical loss or damage during the Policy term caused by the actual not suspected presence of COVID-19 occurring during the Policy term.

9.  Whether Treasure Island suffered any business interruption and extra expense loss as a result of physical loss or damage to its property during the Policy term caused by the presence of COVID-19 or the virus that causes COVID-19.

10. The amount of any cost to repair or replace physical loss or damage to Treasure Island's property occurring during the Policy term caused by each discrete event of the presence of COVID-19 or the virus that causes COVID-19.

11. The time period starting from the time of physical loss or damage caused by the presence of COVID-19 or the virus that causes COVID-19 occurring during the Policy term and ending when, with due diligence and dispatch, the lost or damaged property could be repaired or replaced and made ready for business operations under the same or equivalent physical operating conditions that existed prior to the loss or damage.

12. The amount of any business interruption and extra expense loss Treasure Island's suffered as a result of physical loss or damage to Treasure Island's property during the Policy term caused by each discrete event of the presence of COVID-19 or the virus that causes COVID-19 during the time period starting from the time of physical loss or damage and ending when, with due diligence and dispatch, the lost or damaged property could be repaired or replaced and made ready for business operations under the same or equivalent physical operating conditions that existed prior to the loss or damage.

13. Whether any of Treasure Island's business interruption or extra expense loss was sustained during any idle period when operations would have taken place due to any reason other than physical loss or damage insured by the AFM policy.

14. Whether Treasure Island's claim based on alleged physical loss or damage from the presence of SARS-CoV-2 or COVID-19 is one for contamination, as excluded by the Policy.

15. Whether Treasure Island's claim based on alleged physical loss or damage from the presence of SARS-CoV-2 or COVID-19 is one for "loss of market or loss of use" as excluded by the Policy.

## VI.     ISSUES OF LAW TO BE TRIED AND DETERMINED AT TRIAL

A. **The parties agree on the following issues of law to be tried and determined at trial**.

1. Whether AFM breached the Policy.

   a. Whether COVID-19/SARS-CoV-2 caused "physical loss or damage" at Treasure Island during the Policy term; and

    b.   Whether the Extended Period of Liability (365 days) applies; or

    c.   Whether COVID-19/SARS-CoV-2 were present at Treasure Island during the Policy term without causing physical loss or damage, and access to Treasure Island was limited, restricted or prohibited by: (i) an order of an authorized governmental agency regulating such presence; or, (ii) a decision of an Officer of the Insured as a result of such presence.

2.  Subject to affirmative response(s) above, whether Treasure Island experienced:

    a.   "Business Interruption loss" as a direct result of 1.a.

    b.   "Business Interruption loss" during the Extended Period of Liability (1.b.).

    c.   Recoverable damage from 1.c.

**B.  Treasure Island submits these additional issues of law to be tried and determined at trial.**

1.  Whether AFM failed to conduct a reasonable investigation of Treasure Island's claim.

2.  Whether Treasure Island experienced financial damage from AFM's failure to conduct a reasonable investigation of Treasure Island's claim.

**C.  AFM submits these additional issues of law to be tried and determined at trial.**

1.  Whether Treasure Island's property suffered "physical loss or damage" during the Policy term caused by the presence of COVID-19 or SARS-CoV-2.

2.  Whether the AFM policy's Communicable Disease – Property Damage coverage applies.

3.  Whether the Contamination Exclusion applies to preclude coverage.

4.  Whether the Loss of Use exclusion applies to preclude coverage.

5.  Whether the Idle Periods Exclusion applies to preclude coverage in whole or in part.

6.  Whether the Extended Period of Liability coverage applies to Treasure Island's claim for expenses to reduce loss.

7.  Whether each instance of someone having COVID-19 at Treasure Island is a separate "occurrence" as that term is defined in the AFM Policy.

## VII.   EXHIBITS

a.  The following exhibits are stipulated into evidence in this case and may be so marked by the clerk:

None at this time. Stipulations on exhibits are pending the outcome of the Parties' motions in limine.

b.  As to the following additional exhibits, the parties have reached the stipulations stated:

i.   Stipulations on Plaintiff's exhibits.

None at this time.

ii.  Stipulations on Defendant's exhibits.

None at this time.

c.  As to the following exhibits, the party against whom the same will be offered objects to their admission on the grounds stated:

**1.  Plaintiff's exhibits and objections to them.[4]**

---

[4] The Parties reserve the right to supplement and/or change their exhibit lists subject to the outcome of the Motions to Reconsider within a reasonable time thereafter.

| # | Document | Bates No. | Objection by Defendant |
|---|----------|-----------|------------------------|
| 1. | Treasure Island's Supplemental Responses to Interrogatories, including FRE 1006 summary in Table 1 (C. Barnaby Depo Ex. 201) | | Hearsay |
| 2. | AFM Explanatory Memorandum (SJ1 App. 459-466) | | Relevance |
| 3. | AFM Pro AR 4100: All Risk Coverage Policy Form (SJ1 App. 467-516) | | Relevance |
| 4. | "Germ Warfare" Article in FM Global REASON publication, 2016 (SJ1 App. 517-519) | | Relevance |
| 5. | A/FM slide deck* | | Relevance |
| 6. | Nancy Strout email regarding claim manual (ECF 122) | | Hearsay; Relevance; FRE 403 |
| 7. | AFM's Amended Responses to Requests for Production of Documents, dated 10/14/20 | | Relevance |
| 8. | B. Cook Affidavit in Opposition to Motion to Compel, dated 11/11/20 (B. Cook Depo Ex. 7) | | Relevance |
| 9. | Retail Brands (M. Newton Depo Ex. 7) | | Hearsay; Relevance; FRE 403 |
| 10. | B. Cook Affidavit in Retail Brands (M. Newton Depo Ex. 6) | | Relevance; FRE 403 |
| 11. | Policy in Retail Brands (Newton Ex. 8) | | Relevance; FRE 403 |
| 12. | FM's Motion in Limine in Federal Insurance (M. Roberts Ex. 11) | | Hearsay; Relevance; FRE 403 |
| 13. | AFM Forms filed with New York (B. Bueche Depo Ex. 4) | | Relevance |
| 14. | AFM Healthcare Form (B. Bueche Depo Ex. 5) | | Relevance |
| 15. | Attendance (M. Roberts Depo Ex. 17) | | Relevance |
| 16. | Declaration of Baker regarding Talking Points dated 5/27/21 (ECF 162) | | Relevance |
| 17. | Talking Points (B. Cook Depo Ex.4) | | Relevance |
| 18. | 5/28/20 Docket Entry filing the complaint | | Relevance |
| 19. | Cho list | | Hearsay |

| # | Document | Bates No. | Objection by Defendant |
|---|----------|-----------|------------------------|
| | (K. Cho 30(b)(6) Depo Ex. 220) | | |
| 20. | DeLeon list (D. DeLeon 30(b)(6) Depo Ex. 218) | | Hearsay |
| 21. | Porter list (M. Porter 30(b)(6) Depo Ex. 221) | | Hearsay; Relevance |
| 22. | Taylor list (C. Taylor 30(b)(6) Depo Ex. 219) | | Hearsay; Relevance |
| 23. | Unfair Claims Settlement Practices Act (B. Cook Depo Ex. 9) | | Relevance; FRE 403 |
| 24. | Unfair Property/Casualty Claims Settlement Practices Model Regulation (B. Cook Depo Ex. 10) | | Relevance; FRE 403 |
| 25. | AFM's internal processing re TI claim | AFM000053 | |
| 26. | Kaercher Notice of Loss (B. Anthony Ex. 269) | AFM000064 | |
| 27. | Property Loss Notice | AFM000064 | |
| 28. | 3/20/20 Kaercher email re TI claim | AFM000134 | |
| 29. | Casillas internal processing 3/19/20 email | AFM000139 | |
| 30. | Casillas 3/21/20 communication acknowledging receipt of claim (1) | AFM000145 | |
| 31. | Casillas 3/21/20 communication acknowledging receipt of claim (2) | AFM000146 | |
| 32. | Treasure Island Policy - General Change Endorsement B. Cook Depo Ex. 11 | AFM000155 | Relevance |
| 33. | Catastrophe Executive Loss Summary | AFM000157 | |
| 34. | 4/13/20 Kaercher follow up regarding claim | AFM000235 | |
| 35. | Kaercher Notice of Loss (B. Anthony Ex. 270) | AFM000239 | |
| 36. | Carroll 4/9/20 Denial (B. Anthony Ex. 272) | AFM000240 | |
| 37. | Kaercher follow up communication (B. Anthony Depo Ex. 271) | AFM000246 | |
| 38. | Carrol 4/16/20 response (B. Anthony Ex. 273) | AFM000403 | |
| 39. | Treasure Island's 5/7/20 response (B. Anthony Ex. 274) | AFM000418 | |
| 40. | 5/14 office closed communications | AFM000420 | Relevance |
| 41. | 6/19/20 AFM's letter to Treasure Island re claim | AFM000424 | |
| 42. | 6/8/20 email to Carroll from Casillas re letter to TI re claim, with comments and changes | AFM000432 | Relevance |

18

| # | Document | Bates No. | Objection by Defendant |
|---|----------|-----------|------------------------|
| 43. | 3/26/20 Internal loss memo email | AFM002285 | |
| 44. | 3/23/20 internal rejection tracking | AFM002289 | Relevance |
| 45. | 3/24/20 internal rejection tracking | AFM002290 | Relevance |
| 46. | 4/13/20 Casillas and Carroll meeting | AFM002296 | |
| 47. | 6/8/20 email from Casillas re TI claim | AFM002307 | |
| 48. | Catastrophe Executive Loss Summary | AFM002442 | |
| 49. | 4/14/20 did they renew emails (8) | AFM002444 | Relevance; FRE 403 |
| 50. | 6/19/20 response to TI with proof of loss | AFM002453 | |
| 51. | 3/26/20 internal reinsurance | AFM002479 | Relevance; FRE 403 |
| 52. | Email regarding AFM draft TI letter dated 3/21/20 | AFM002487 | |
| 53. | Catastrophe Executive Loss Summary | AFM002678 | |
| 54. | FM Global's Claims Procedures (D. Carroll Depo Ex. 5) | AFM003044 | Relevance; FRE 403 |
| 55. | 4/15/20 internal communications | AFM003095 | |
| 56. | 5/14 office closed communications (2) | AFM003111 | Relevance |
| 57. | 4/14/20 did they renew emails (1) | AFM003123 | Relevance; FRE 403 |
| 58. | 4/14/20 did they renew emails (2) | AFM003124 | Relevance; FRE 403 |
| 59. | 4/14/20 did they renew emails (3) | AFM003125 | Relevance; FRE 403 |
| 60. | 4/14/20 did they renew emails (4) | AFM003126 | Relevance; FRE 403 |
| 61. | 4/14/20 did they renew emails (5) | AFM003127 | Relevance; FRE 403 |
| 62. | 4/14/20 did they renew emails (6) | AFM003128 | Relevance; FRE 403 |
| 63. | 4/14/20 did they renew emails (7) | AFM003135 | Relevance; FRE 403 |
| 64. | AFM's Capacity Requirement (B. Bueche Depo Ex. 3) | AFM003479 | Relevance; FRE 403 |
| 65. | 1/31/20 Talking Points (B. Cook Depo Ex. 6) | AFM003514 | Relevance |
| 66. | February 6, 2020 revised Talking Points (B. Cook Depo Ex. 8) | AFM003517 | Relevance |
| 67. | FM Global Catastrophe Handling Plan (B. Cook Depo Ex. 12) | AFM003540 | Relevance |
| 68. | FM Global's Claim Procedure Manual (P. Evans Depo Ex. 6) | AFM003718 | Relevance; FRE 403 |

| # | Document | Bates No. | Objection by Defendant |
|---|----------|-----------|------------------------|
| 69. | 4/14/20 did they renew emails (10) | AFM003854 | Bates number does not match document description. All objections reserved. |
| 70. | Catastrophe Executive Loss Summary | AFM003856 | |
| 71. | Catastrophe Executive Loss Summary | AFM003858 | |
| 72. | Carroll 4/23/20 internal communication regarding follow up | AFM003879 | |
| 73. | 4/14/20 did they renew emails (9) | AFM003895 | Relevance; FRE 403 |
| 74. | Casillas internal processing 3/19/20 email | AFM003898 | |
| 75. | Carroll 3/23/20 internal rejection | AFM003905 | Relevance |
| 76. | Wing E-mail* | FMGLOBAL_C_00030210 | Relevance; FRE 403 |
| 77. | Articles (C. Barnaby Depo Ex. 210) | TI_000001 | Hearsay; Relevance |
| 78. | Articles (C. Barnaby Depo Ex. 213) | TI_000003 | Hearsay; Relevance |
| 79. | Attendance Records (T. Cummins Depo Ex. 225) | TI_000032 | Relevance |
| 80. | Attendance Records (T. Cummins Depo Ex. 226) | TI_000103 | Relevance |
| 81. | Antibody Test Results (T. Cummins Depo Ex. 233) | TI_000185 | Hearsay; Relevance |
| 82. | AFM cover letter and Treasure Island policy (D. Carroll Depo Ex. 4) | TI_001078 | |
| 83. | Article (C. Barnaby Depo Ex. 211) | TI_001275 | Hearsay; Relevance |
| 84. | Article (C. Barnaby Depo Ex. 212) | TI_001289 | Hearsay; Relevance |
| 85. | Article (C. Barnaby Depo Ex. 214) | TI_001294 | Hearsay; Relevance |
| 86. | J. Griffis deposition Ex. 257 | TI_001333 | |
| 87. | Article (C. Barnaby Depo Ex. 216) | TI_001350 | Hearsay; Relevance |
| 88. | Article (C. Barnaby Depo Ex. 215) | TI_001356 | Hearsay; Relevance |
| 89. | Site plans (SJ1 App. 431-446) | TI_001443 | |
| 90. | Property information | TI_001456 | |

| # | Document | Bates No. | Objection by Defendant |
|---|----------|-----------|------------------------|
| 91. | Angela Rasmussen Report (Ex. 286) | TI_001460 | Hearsay |
| 92. | J. Lewnard Report | TI_001486 | Hearsay |
| 93. | J. Lewnard CV | TI_001498-001506 | FRE 401, 402, 403, 801, 802 |
| 94. | Alex LeBeau Report (A. LeBeau Depo Ex. 296) | TI_001507 | Hearsay |
| 95. | A. LeBeau CV | TI_001520 – TI_001525 | FRE 401, 402, 403, 801, 802 |
| 96. | Timothy Yessman Report | TI_001531 | Hearsay; Relevance |
| 97. | T. Yessman CV | TI_001536-TI_001539 | FRE 401, 402, 403, 801, 802 |
| 98. | 2020 Budget | TI_001573 | |
| 99. | J. Griffis deposition Ex. 252 | TI_001584 | |
| 100. | Brian Twellman Report (B. Twellman Ex. 276) | TI_001597 | Hearsay |
| 101. | B. Twellman CV | TI_001607-TI_001613 | FRE 401, 402, 403, 801, 802 |
| 102. | Documents relied on by Twellman listed in Report | TI_001669 | Hearsay; Relevance |
| 103. | Corrective Action plan (Cummins Depo Ex. 229) | TI_002059 | |
| 104. | Antibody Test Results (T. Cummins Depo Ex. 232 | TI_002612 | Hearsay; Relevance |
| 105. | Antibody Test Results (T. Cummins Depo Ex. 231) | TI_002624 | Hearsay; Relevance |
| 106. | Testing Results (T. Cummins Depo Ex. 242) | TI_003108 | Hearsay; Relevance |
| 107. | Testing Results (T. Cummins Depo Ex. 243) | TI_003250 | Hearsay; Relevance |
| 108. | Incident Report (C. Barnaby Depo Ex. 203) | TI_003368 | Hearsay; Relevance |
| 109. | Incident Report (C. Barnaby Depo Ex. 205) | TI_003373 | Hearsay; Relevance |
| 110. | Incident Report (C. Barnaby Depo Ex. 204) | TI_003382 | Hearsay; Relevance |
| 111. | Angela Rasmussen Rebuttal/Supplement (Rasmussen Depo Ex. 287) | TI_003387 | Hearsay |

| # | Document | Bates No. | Objection by Defendant |
|---|----------|-----------|------------------------|
| 112. | A. Rasmussen CV | TI_003392 – TI_003402 | FRE 401, 402, 403, 801, 802 |
| 113. | T. Yessman Reply | TI_003409 | Hearsay; Relevance |
| 114. | Attendance (T. Cummins Ex. Depo 227) | TI_003414 | Relevance |
| 115. | Attendance (T. Cummins Depo Ex. 245) | TI_003414 | Relevance |
| 116. | Attendance (M. Roberts Depo Ex. 16) | TI_003416 | Relevance |
| 117. | Attendance (T. Cummins Depo Ex .244) | TI_003416 | Relevance |
| 118. | DOL Report (T. Cummins Depo Ex. 224) | TI_003735 | Hearsay; Relevance |
| 119. | Room response (C. Barnaby Depo Ex. 206) | TI_003789 | Relevance |
| 120. | J. Griffis deposition Ex. 259 | TI_003970 | |
| 121. | J. Griffis deposition Ex. 260 | TI_003971 | |
| 122. | J. Griffis deposition Ex. 258 | TI_003972 | |
| 123. | J. Griffis deposition Ex. 246 | TI_004009 | |
| 124. | J. Griffis deposition Ex. 249 | TI_004014 | |
| 125. | J. Griffis deposition Ex. 248 | TI_004015 | |
| 126. | J. Griffis deposition Ex. 247 | TI_004017 | |
| 127. | Kevin Cahill Report dated 1/22/21 (B. Twellman Depo Ex. 282) | TI_004087 | Hearsay |
| 128. | K. Cahill CV | TI_004107-TI_004124 | FRE 401, 402, 403, 801, 802 |
| 129. | J. Lewnard Supplement | TI_004126 | Hearsay |
| 130. | B. Twellman Ex. 253 | TI_004136 | |
| 131. | J. Griffis deposition Ex. 253 | TI_004136 | Duplicative |
| 132. | B. Twellman Ex. 254 | TI_004137 | |
| 133. | J. Griffis deposition Ex. 254 | TI_004137 | Duplicative |
| 134. | B. Twellman Ex. 255 | TI_004138 | |
| 135. | J. Griffis deposition Ex. 255 | TI_004138 | Duplicative |
| 136. | J. Griffis deposition Ex. 256 | TI_004139 | |
| 137. | Twellman Supplement Report (B. Twellman Ex. 277) | TI_004140 | Hearsay |
| 138. | Documents relied on by B. Twellman (Supplemental Report) | TI_004219 | Relevance; Hearsay |
| 139. | Demonstrative Exhibits as later identified | | Objections Reserved |

**\*These documents were produced by FM in another matter (<u>Cinemark v. FM</u>), and were not designated by FM as confidential. However, there are approximately 12 other documents that are relevant to this matter (<u>TI v. AFM</u>), but have been designated confidential by FM. Consistent with Judge Youchah's Sanctions Order dated 9/26/23, counsel for Treasure Island is seeking an agreement with counsel for A/FM to use those documents in this case. Counsel for Treasure Island raised this particular issue at a meet and confer on 4/15/24 (approximately 2 weeks after this Court partially denied AFM's Motion for Summary Judgment). In the event the Parties are unable to agree, Treasure Island will bring this before the Court in due course.**

Plaintiff reserves the right to use any exhibit offered, listed, or disclosed by Defendant.

**Plaintiff also reserves the right to utilize impeachment documents not listed herein.**

Defendant reserves the right to object to the admissibility of any exhibit being offered by Plaintiff on the basis of foundation, authenticity, hearsay, relevance, more prejudicial than probative and admissibility. Defendant also reserves the right to object to any exhibit being offered by Plaintiff which has been improperly or untimely disclosed, or not previously produced during the normal course of discovery proceedings as mandated by FRCP 26. Defendant further reserves any and all other remaining evidentiary objections for trial.

### 2.  Defendant's exhibits and objections to them.

| # | Document | Bates No. | Objection by Plaintiff |
|---|----------|-----------|------------------------|
| 200 | AFM Policy No. GS784 issued March 20, 2019 (DEX 002 – Beuche) | TI_001078-TI_001140 | |
| 201 | Letter from David Carroll (AFM) to Brad Anthony (TI) dated April 9, 2020 (DEX 004-Yessman) | TI_000008-TI_000010 | |
| 202 | Treasure Island's Supplemental Responses to AFM's First Set of Interrogatories | n/a | |
| 203 | Letter to Nevada Gaming Control Board from Treasure Island re re-opening Guidelines (DEX 229 – Cummins) | TI_002059-TI_002096 | |

| # | Document | Bates No. | Objection by Plaintiff |
|---|----------|-----------|------------------------|
| 204 | Acord Property Loss Notice (DEX 269 – Anthony) | AFM000064-AFM000066 | |
| 205 | Email thread dated March 19, 2020 from Allen Kaercher (Kaercher Ins.) to Marika Block (AFM) and William Kropp (AFM) re: TI claim (DEX 270 – Anthony) | AFM000239 | |
| 206 | Email thread from David Carroll (AFM) to Jason Wing (AFM) re: letter and response (DEX 271 – Anthony) | AFM000246-AFM000250 | |
| 207 | Letter dated April 9, 2020 from David Carroll (AFM) to Brad Anthony (TI) re: coverage position (DEX 272 – Anthony) | AFM000240-AFM000242 | |
| 208 | Letter dated April 16, 2020 from David Carroll (AFM) to Brad Anthony (TI) re: coverage position and Civil Authority provisions (DEX 273 – Anthony) | AFM000403-AFM000405 | |
| 209 | Smith College article titled, "Getting to the Heart of COVID-19" by Cheryl Dellecese (DEX 289 – Rasmussen) | n/a | FRE 401, 402, 403, 602, 901, 902. |
| 210 | Article titled, "A Virologist Explains Why COVID-19 Coronavirus Isn't Really Dangerously Lingering on Surfaces for Weeks," by Angela Rasmussen (DEX 290 – Rasmussen) | n/a | FRE 401, 402, 403, 602, 901, 902. |
| 211 | CDC Science Brief: "SARS-CoV-2 and Surface (Fomite) Transmission for Indoor Community Environments," updated April 5, 2021 (DEX 292 – Rasmussen) | n/a | FRE 401, 402, 403, 602, 901, 902. |
| 212 | CDC article updated April 5, 2021 titled "Cleaning and Disinfecting Your Facility," (DEX 293 – Rasmussen) | n/a | FRE 401, 402, 403, 602, 901, 902. |
| 213 | Email thread dated March 19, 2020 from Marika Block (AFM) to Allen Kaercher (Kaercher Ins.), et al. re: claim | AFM000053-AFM000055 | |
| 214 | Email thread dated March 20, 2020 from Allen Kaercher (Kaercher Ins.) to Jeffrey Casillas (AFM), et al. re: Corona Virus closure – civil authority | AFM000062-AFM000063 | FRE 401, 402, 403, 602, 901, 902. |

| # | Document | Bates No. | Objection by Plaintiff |
|---|----------|-----------|------------------------|
| 215 | Letter dated March 21, 2020 from Jeffrey Casillas (AFM) to Brad Anthony (TI) acknowledging receipt of notification of claim | AFM000146-AFM000149 | |
| 216 | Email thread dated April 13, 2020 from Robin Rider (Kaercher Ins.) to Jeffrey Casillas (AFM), et al. re: denial of coverage, etc. | AFM000235-AFM000238 | |
| 217 | Letter dated June 19, 2020 from David Carroll (AFM) to Brad Anthony (TI) re: claim coverage, etc. | AFM000424-AFM000429 | |
| 218 | Email thread dated June 19, 2020 from David Carroll (AFM) to Brad Anthony (TI), et al. re: Sworn Statement in Proof of Loss. | AFM002453 | |
| 219 | AFM's Sworn Statement in Proof of Loss (blank) | AFM002454-AFM002455 | FRE 401, 402, 403, 901, 902. |
| 220 | Email thread dated March 19, 2020 from Allen Kaercher (Kaercher Ins.) to Marika Block (AFM), et al re: civil authority, etc. | TI_000006-TI_000007 | FRE 401, 402, 403. |
| 221 | FEMA Covid-19 Emergency Declaration dated March 13, 2020. | TI_000196-TI_000197 | FRE 401, 402, 403. |
| 222 | Health and Safety Policies for Resumption of Gaming Operations Nonrestricted Licensees dated October 1, 2020 | TI_000235-TI_000247 | FRE 401, 402, 403. |
| 223 | Nevada Gaming Control Board, Notice to Licensees dated April 2, 2020 | TI_000249 – TI_000250 | FRE 401, 402, 403. |
| 224 | Nevada Gaming Control Board, Notice to Licensees dated April 2, 2020 | TI_000252 | FRE 401, 402, 403. |
| 225 | Nevada Health Response, Nevada United Roadmap to Recovery dated April 30, 2020 | TI_000281 | FRE 401, 402, 403. |
| 226 | State of Nevada, Executive Department, Declaration of Emergency Directive 016 dated April 29, 2020 | TI_000487 – TI_000490 | FRE 401, 402, 403. |
| 227 | State of Nevada, Executive Department, Declaration of Emergency Directive 002 dated March 18, 2020 | TI_000637 – TI_000638 | FRE 401, 402, 403. |

| # | Document | Bates No. | Objection by Plaintiff |
|---|----------|-----------|------------------------|
| 228 | State of Nevada, Executive Department, Declaration of Emergency Directive 010 Stay at Home Order dated March 31, 2020 | TI_000785 – TI_000787 | FRE 401, 402, 403. |
| 229 | State of Nevada, Executive Department, Declaration of Emergency Directive 021 – Phase Two Reopening Plan dated May 28, 2020 | TI_000937 – TI_000946 | FRE 401, 402, 403. |
| 230 | Notice of Loss – Policy No. KTK-CMB-6P92851-7-20 to The Travelers Indemnity Co. Re: Treasure Island, LLC, Circus Circus LV, LP | TI_001143 – TI_001144 | FRE 401, 402, 403. |
| 231 | Letter from William Englehardt, The Travelers Indemnity Co. to Kevin Small (Hunton, Andres & Kurth LLP) dated June 2, 2020 | TI_001145 – TI_001155 | FRE 401, 402, 403. |
| 232 | Treasure Island letter to Terry Johnson, Esq., (Nevada Gaming Control Board) dated May 14, 2020 – Re-Opening Guidelines | TI_001391 – TI_001428 | FRE 401, 402, 403. |
| 233 | Email from Ray Suppe (VP of Customer Safety, LV Convention and Visitors Authority) providing Covid-19 Information from DHS dated May 1, 2020. | TI_001941 TI_001945 | FRE 401, 402, 403. |
| 234 | CDC Article titled "How Covid-19 Spreads" dated August 11, 2022. | AFM0163 – AFM0164 | FRE 401, 402, 403, 701, 901, 902. |
| 235 | CDC Article titled "Cleaning and Disinfecting Your Facility" dated April 5, 2021. | AFM0165 – AFM0170 | FRE 401, 402, 403, 701, 901, 902. |
| 236 | CDC Article titled "When and How to Clean and Disinfect a Facility" dated November 2, 2022. | AFM0171 – AFM0173 | FRE 401, 402, 403, 701, 901, 902. |
| 237 | Treasure Island Hotel & Casino facebook post dated March 17, 2020 re: closure | n/a | FRE 401, 402, 403, 701, 801, 802, 901, 902, FRCP 37(c)(1). |
| 238 | Treasure Island "X" post dated March 18, 2020 re: closing of gaming operations and hotel operations | n/a | FRE 401, 402, 403, 701, 801, 802, 901, 902, FRCP 37(c)(1). |

26

| # | Document | Bates No. | Objection by Plaintiff |
|---|---|---|---|
| 239 | Forbes Article titled "Donald Trump's Best Friend, Billionaire Casino Mogul Phil Ruffin, Sees a Hidden Jackpot In The Pandemic" dated April 30, 2020 | n/a | FRE 401, 402, 403, 701, 801, 802, 901, 902, FRCP 37(c)(1). |
| 240 | Article titled "How did the recent GDP revisions change the picture of the 2007-2009 recession and the recovery"? | CAHILL-TI_000001 – CAHILL-TI_000004 | FRE 401, 402, 403. |
| 241 | GDP News Release dated December 22, 2020 | CAHILL-TI_000005 – CAHILL-TI_000011 | FRE 401, 402, 403. |
| 242 | Article titled "By the seat of our pants" dated June 7, 2020 | CAHILL-TI_000012 – CAHILL-TI_000023 | FRE 401, 402, 403, 602, 801, 802. |
| 243 | Email from Jerry Griffis (TI) to Christopher Cunio (Hunton), et al dated Jan. 20, 2021 | CAHILL-TI_000024 | |
| 244 | Treasure Island Operating Statement for years 2016 - 2020 | CAHILL-TI_000025 | |
| 245 | Principles of Microeconomics | CAHILL-TI_000026 – CAHILL-TI_000027 | FRE 401, 402, 403. |
| 246 | LVCVA Tourism Tracker, Indicator Report | CAHILL-TI_000028 | |
| 247 | FEMA Covid-19 Emergency Declaration dated March 13, 2020 | TI_000196 – TI_000197 | FRE 401, 402, 403. |
| 248 | Nevada Gaming Control Board – Notice to Licensees dated May 27, 2020 | TI_000204 – TI_000205 | FRE 401, 402, 403. |
| 249 | Nevada Gaming Control Board – Notice to Licensees dated August 14, 2020 | TI_000206 – TI_000207 | FRE 401, 402, 403. |

| # | Document | Bates No. | Objection by Plaintiff |
|---|----------|-----------|------------------------|
| 250 | Health and Safety Policies for Resumption of Gaming Operations – Restricted Licensees | TI_000208 – TI_000212 | FRE 401, 402, 403. |
| 251 | Nevada Gaming Control Board – Policy Memorandum dated April 21, 2020 | TI_000214 – TI_000219 | FRE 401, 402, 403. |
| 252 | Nevada Gaming Control Board, Addendum to April 21, 2020 Policy Memorandum | TI_000221 – TI_000223 | FRE 401, 402, 403. |
| 253 | Nevada Gaming Control Board, Addendum 2 to April 21, 2020 Policy Memorandum | TI_000224 – TI_000225 | FRE 401, 402, 403. |
| 254 | Nevada Gaming Control Board – Notice to Licensees dated March 16, 2020 | TI_000226 | FRE 401, 402, 403. |
| 255 | Nevada Gaming Control Board, Policy Memorandum dated March 17, 2020 | TI_000228 – TI_000234 | FRE 401, 402, 403. |
| 256 | Nevada Gaming Control Board, Notice to Licensees dated May 1, 2020 | TI_000248 | FRE 401, 402, 403. |
| 257 | Nevada Gaming Control Board, Notice to Licensees dated April 2, 2020 | TI_000249 – TI_000250 | FRE 401, 402, 403. |
| 258 | Nevada Gaming Control Board, Notice to Licensees dated March 17, 2020 | TI_000252 | FRE 401, 402, 403. |
| 259 | Nevada Gaming Control Board, Notice to Licensees dated March 13, 2020 | TI_000253 | FRE 401, 402, 403. |
| 260 | Nevada Health Response: Guidance on Directive 027: Elevated Disease Transmission Criteria dated July 10, 2020 | TI_000258 – TI_000260 | FRE 401, 402, 403. |
| 261 | Nevada Health Response, Roadmap to Recovery for Nevada | TI_000261 | FRE 401, 402, 403. |
| 262 | Nevada Health Response, Roadmap to Recovery for Nevada | TI_000364 | FRE 401, 402, 403. |
| 263 | Nevada Guidance for Safe Gatherings dated September 29, 2020 | TI_000365 – TI_000387 | FRE 401, 402, 403. |
| 264 | Nevada Health Response, Nevada Medical Advisory Team: Guidance on Improvised Facial Coverings dated April 3, 2020 | TI_000388 – TI_000390 | FRE 401, 402, 403. |
| 265 | Nevada Health Response, Covid-19 Re-Opening Response Plan | TI_000391 – TI_000399 | FRE 401, 402, 403. |

| # | Document | Bates No. | Objection by Plaintiff |
|---|----------|-----------|------------------------|
| 266 | Nevada Health Response Covid-19 Risk Mitigation Initiative dated March 17, 2020 | TI_000400 – TI_000404 | FRE 401, 402, 403. |
| 267 | Steve Sisolak, Governor of Nevada – Roadmap to Recovery for Nevada: Phase 2 | TI_000405 – TI_000418 | FRE 401, 402, 403. |
| 268 | Executive Department, Covid-19 Declaration of Emergency Directive dated March 15, 2020 | TI_000431 – TI_000432 | FRE 401, 402, 403. |
| 269 | Dept. of Public Safety, State of Emergency | TI_000434 – TI_000444 | FRE 401, 402, 403. |
| 270 | Nevada Health Response, Gov. Sisolak Guidance: Directive 003 – Essential Businesses (updated April 16, 2020 | TI_000445 – TI_000464 | FRE 401, 402, 403. |
| 271 | Executive Department, State of California – Proclamation of a State of Emergency dated March 4, 2020 | TI_000497 – TI_000501 | FRE 401, 402, 403. |
| 272 | Covid-19 Re-Opening Response Plan | TI_000577 – TI_000585 | FRE 401, 402, 403. |
| 273 | Executive Department, Declaration of Emergency for Covid-19 dated March 12, 2020 | TI_000616 – TI_000618 | FRE 401, 402, 403. |
| 274 | Executive Department, Declaration of Emergency Directive 002 dated March 18, 2020 | TI_000637 – TI_000638 | FRE 401, 402, 403. |
| 275 | Steve Sisolak, Governor of Nevada, Roadmap to Recovery for Nevada | TI_000650 – TI_000659 | FRE 401, 402, 403. |
| 276 | Dept. of Business and Industry Division of Insurance, Statement of Emergency | TI_000671 – TI_000678 | FRE 401, 402, 403. |
| 277 | Executive Department, Declaration of Emergency Directive 008 dated March 29, 2020 | TI_000706 – TI_000709 | FRE 401, 402, 403. |
| 278 | Executive Department, Declaration of Emergency for Covid-19 – Directive 003 dated March 20, 2020 | TI_000710 – TI_000713 | FRE 401, 402, 403. |
| 279 | Steve Sisolak, Governor of Nevada – Roadmap to Recovery for Nevada: Phase 2 | TI_000714 – TI_000727 | FRE 401, 402, 403. |
| 280 | Nevada Health Response, Governor Steve Sisolak announces expansion of social distancing emergency directives dated April 8, 2020 | TI_000754 – TI_000758 | FRE 401, 402, 403. |

| # | Document | Bates No. | Objection by Plaintiff |
|---|----------|-----------|------------------------|
| 281 | Nevada Health Response, Governor Sisolak Announces COVID-19 Risk Mitigation Initiatives dated March 17, 2020 | TI_000765 – TI_000772 | FRE 401, 402, 403. |
| 282 | Executive Department, Declaration of Emergency Directive 010 Stay at Home Order dated March 31, 2020 | TI_000785 – TI_000787 | FRE 401, 402, 403. |
| 283 | Executive Department, Declaration of Emergency Directive 006 dated March 22, 2020 | TI_000789 – TI_000791 | FRE 401, 402, 403. |
| 284 | Nevada Health Response, Road to Recovery: Moving to a New Normal dated August 3, 2020 | TI_000809 – TI_000818 - | FRE 401, 402, 403. |
| 285 | Executive Department, Declaration of Emergency Directive 007 dated March 24, 2020 | TI_000830 – TI_000832 | FRE 401, 402, 403. |
| 286 | Nevada Health Response Covid-19 Risk Mitigation Initiative dated March 17, 2020 | TI_000837 – TI_000841 | FRE 401, 402, 403. |
| 287 | Nevada Health Response, Gov. Sisolak Guidance: Directive 007 – Gatherings dated March 24, 2020 | TI_000852 – TI_000853 | FRE 401, 402, 403. |
| 288 | Executive Department, Declaration of Emergency Directive 009 (Revised) dated April 1, 2020 | TI_000856 – TI_000858 | FRE 401, 402, 403. |
| 289 | Nevada Health Response: Guidance on Directive 027: Elevated Disease Transmission Criteria dated July 10, 2020 | TI_000914 – TI_000916 | FRE 401, 402, 403. |
| 290 | Nevada Health Response, Gov. Sisolak Guidance: Directive 013 dated April 8, 2020 | TI_000930 – TI_000931 | FRE 401, 402, 403. |
| 291 | Steve Sisolak, Governor of Nevada – Roadmap to Recovery for Nevada | TI_000947 - TI_000956 | FRE 401, 402, 403. |
| 292 | Nevada Health Response, Roadmap to Recovery for Nevada | TI_000957 – TI_000975 | FRE 401, 402, 403. |
| 293 | Emergency Regulation to Protect Nevadans from Increased Medical and Prescription Costs Related to Covid-19 | TI_001036 – TI_001037 | FRE 401, 402, 403. |
| 294 | Executive Department, Declaration of Emergency Directive 013 dated April 8, 2020 | TI_001038 – TI_001041 | FRE 401, 402, 403. |
| 295 | Nevada Health Response, Gov. Sisolak Guidance: Directive 016 dated April 29, 2020 | TI_001048 – TI_001051 | FRE 401, 402, 403. |

30

| # | Document | Bates No. | Objection by Plaintiff |
|---|----------|-----------|------------------------|
| 296 | Nevada Health Response, Governor Sisolak announces Stay at Home directive, extends closure date to the end of April dated April 1, 2020 | TI_001052 – TI_001053 | FRE 401, 402, 403. |
| 297 | Office of Governor Steve Sisolak, Memorandum dated March 22, 2020 | TI_001054 | FRE 401, 402, 403. |
| 298 | Donald J. Trump, Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (Covid-19) Outbreak, dated March 13, 2020 | TI_001056 – TI_001057 | FRE 401, 402, 403. |
| 299 | Treasure Island Annual Budget – Pre-Covid, 2020 | TI_001330 – TI_001331 | FRE 401, 402, 403. |
| 300 | Treasure Island Monthly Actuals v. Pre-Covid Annual Budget, YTD June 2020 | TI_001332 | FRE 401, 402, 403. |
| 301 | Treasure Island Monthly Actuals vs. Pre-Covid Annual Budget, 2019 - 2020 | TI_001333 | |
| 302 | Treasure Island Company Income Statement dated September 14, 2020 | TI_001541 | FRE 401, 402, 403. |
| 303 | Treasure Island Company Income Statement dated February 13, 2019 | TI_001542 | FRE 401, 402, 403. |
| 304 | Treasure Island Company Income Statement dated December 16, 2019 | TI_001543 | FRE 401, 402, 403. |
| 305 | Treasure Island Company Income Statement dated November 12, 2019 | TI_001544 | FRE 401, 402, 403. |
| 306 | Treasure Island Company Income Statement dated June 12, 2019 | TI_001545 | FRE 401, 402, 403. |
| 307 | Treasure Island Company Income Statement dated October 10, 2019 | TI_001546 | FRE 401, 402, 403. |
| 308 | Treasure Island Company Income Statement dated July 15, 2020 | TI_001547 | FRE 401, 402, 403. |
| 309 | Treasure Island Company Income Statement dated March 12, 2020 | TI_001548 | FRE 401, 402, 403. |
| 310 | Treasure Island Company Income Statement dated September 11, 2019 | TI_001549 | FRE 401, 402, 403. |

| # | Document | Bates No. | Objection by Plaintiff |
|---|----------|-----------|------------------------|
| 311 | Treasure Island Company Income Statement dated February 13, 2020 | TI_001550 | FRE 401, 402, 403. |
| 312 | Treasure Island Company Income Statement dated March 14, 2019 | TI_001551 | FRE 401, 402, 403. |
| 313 | Treasure Island Company Income Statement dated August 13, 2020 | TI_001552 | FRE 401, 402, 403. |
| 314 | Treasure Island Company Income Statement dated May 21, 2020 | TI_001553 | FRE 401, 402, 403. |
| 315 | Treasure Island Company Income Statement dated June 11, 2020 | TI_001554 | FRE 401, 402, 403. |
| 316 | Treasure Island Company Income Statement dated April 15, 2020 | TI_001555 | FRE 401, 402, 403. |
| 317 | Treasure Island Company Income Statement dated April 12, 2019, 2019 | TI_001556 | FRE 401, 402, 403. |
| 318 | Treasure Island Company Income Statement dated May 13, 2019 | TI_001557 | FRE 401, 402, 403. |
| 319 | Treasure Island Company Income Statement dated January 17, 2020 | TI_001558 | FRE 401, 402, 403. |
| 320 | Treasure Island 2020 Budget | TI_001573 | |
| 321 | Treasure Island Departmental Income Statement, Other Operating Division, 2018 – 2020 | TI_001574 | FRE 401, 402, 403. |
| 322 | Treasure Island Departmental Income Statement, Hotel Division, 2018 – 2020 | TI_001577 | FRE 401, 402, 403. |
| 323 | Treasure Island Departmental Income Statement, Entertainment Division, 2018 – 2020 | TI_001579 | FRE 401, 402, 403. |
| 324 | Treasure Island Departmental Income Statement, General and Administrative Division, 2018 – 2020 | TI_001581 | FRE 401, 402, 403. |
| 325 | Treasure Island Departmental Income Statement, Casino Division, 2018 – 2020 | TI_001582 | FRE 401, 402, 403. |
| 326 | Treasure Island Departmental Income Statement, Food and Beverage Division, 2018 – 2020 | TI_001583 | FRE 401, 402, 403. |

| # | Document | Bates No. | Objection by Plaintiff |
|---|---|---|---|
| 327 | Treasure Island Covid-19 Related Expenses, Business Interruption, For the year ended December 31, 2020 | TI_001584 | |
| 328 | Treasure Island Company Income Statement dated November 11, 2020 | TI_003970 | |
| 329 | Treasure Island Company Income Statement dated December 11, 2020 | TI_003971 | |
| 330 | Treasure Island Company Income Statement dated October 13, 2020 | TI_003972 | |
| 331 | Radisson License Agreement between Radisson Hotels International, Inc. and Treasure Island, LLC dated July 12, 2019 | TI_003973 – TI_004008 | FRE 401, 402, 403. |
| 332 | Treasure Island Radisson Invoices Charges, 2020 | TI_004009 | |
| 333 | Treasure Island Radisson Invoice Charges, 2020 | TI_004010 – TI_004013 | FRE 401, 402, 403. |
| 334 | Treasure Island Health Benefits Paid by the Employer, Furloughed Employees, June 30 - Nov. 30 | TI_004014 | |
| 335 | Treasure Island, Interdepartment Allocations, 2019 – 2020 | TI_004015 | |
| 336 | Treasure Island Lease Schedule of Expected vs. Actual Rent, January 2019 – December 2019 | TI_004016 | FRE 401, 402, 403. |
| 337 | Treasure Island Lease Schedule of Expected vs. Actual Rent, January 2020 – December 2020 | TI_004017 | |
| 338 | Treasure Island Covid-19 Related Expenses, Business Interruption for the year ended December 31, 2020 | TI_004136 | |
| 339 | Treasure Island PO's Direct to Outlets, March – September 2020 | TI_004137 | |
| 340 | Treasure Island PO's Requisitioned from the Warehouse, March – December 2020 | TI_004038 | FRE 401, 402, 403. |
| 341 | Treasure Island Cares Act – Retention Credit for the Three Months Ending June 30, 2020 | TI_004039 | FRE 401, 402, 403. |
| 342 | Mark Roberts CV | Appendix B to Roberts Dep. Exhibit 5 | FRE 401, 402, 403, 801, 802. |

| # | Document | Bates No. | Objection by Plaintiff |
|---|---|---|---|
| 343 | Mark Newton CV | Exhibit 1 to Newton Dep. Exhibit 1 | FRE 401, 402, 403, 801, 802. |
| 344 | Schedules supporting Business Income Loss calculations | Exhibit 1 to Newton Dep. Exhibit 3 | FRE 401, 402, 403, 801, 802. |
| | Demonstrative Exhibits as later identified | | Objections Reserved |

Defendant reserves the right to use any exhibit offered by Plaintiff. Defendant further anticipates use of demonstrative exhibits during trial to be exchanged at a date mutually-agreed upon by the parties or as further ordered by the Court. **Defendant also reserves the right to utilize impeachment documents not listed herein.**

Plaintiff reserves the right to object to the admissibility of any exhibit being offered by Defendant on the basis of foundation, authenticity, relevance, and admissibility. Plaintiff further reserves the right to object to any exhibit being offered by Defendant which has been improperly or untimely disclosed, and not previously produced during the normal course of discovery proceedings as mandated by FRCP 26. Plaintiff further reserves the right to object to the relevance of any exhibit being offered by Defendant that is more prejudicial than probative. Plaintiff further reserves the right to object to any exhibit being offered by Defendant that does not meet a hearsay exception. Plaintiff further reserves the right to object to any exhibit being offered by Defendant that may violate HIPAA and the use of such exhibit at trial if not properly offered for witness impeachment purposes. Plaintiff further reserves any and all other remaining evidentiary objections for trial.

    d. Electronic evidence: The parties do not intend to present any electronic evidence for purposes of jury deliberations at this time.

e.   Depositions:

i.    Plaintiff may offer the following depositions:

**Deposition of Brian Cook**

3:25-4:23
30:5-32:12 AFM objects to this testimony as irrelevant.
35:13-40:2 AFM objects to this testimony as irrelevant.
40:20-41:7 AFM objects to this testimony as irrelevant.
45:23–47:15 AFM objects to this testimony as irrelevant.
55:7-59:5 AFM objects to this testimony as irrelevant.
62:4-66:23 AFM objects to this testimony as irrelevant.
94:5-95:10
106:3-109:8
121:5-125:14 AFM objects to this testimony as irrelevant.
141:9-143:15 AFM objects to this testimony as irrelevant and prejudicial, as it relates to the bad faith claim that has been dismissed.
150:15-155:10 AFM objects to 150:15-153:25 as irrelevant and prejudicial and objects to 154:1-155:10 as calling for speculation and argumentative.
160:14-162:18 AFM objects to 162:7 (beginning with "And") -167:18 as irrelevant.
166:8-167:21 AFM objects to 166:22-167:21 as irrelevant.
179:1-180:6 AFM objects to 179:1-13 as irrelevant and prejudicial.
190:8-18
3:23-4:3
12:16-14:10
15:10-16:9
17:6-18:13
37:1–40:1 AFM objects to 37:24-40:1 as irrelevant.
43:17-45:7
63:16-66:7 AFM objects to 63:16-65:4 as hearsay, as duplicative and needlessly cumulative in that it purports to summarize prior testimony, and as unduly prejudicial in that it incorrectly summarizes prior testimony. FRE 403

ii.   Defendant may offer the following depositions:

AFM provides the following counter-designations:

Brian Cook Rule 30(b)(6) Deposition
47:16-21 Treasure Island objects to this testimony as not responsive to the question and on grounds of relevance, foundation, lack of personal knowledge, lack of expertise, hearsay, and undue prejudice..

51:10-23 [if relevance objections are overruled] Treasure Island objects to this testimony on grounds of relevance, foundation, lack of personal knowledge, lack of expertise, hearsay, and undue prejudice.

54:5-14 [if relevance objections are overruled] Treasure Island objects to this testimony on grounds of relevance, foundation, lack of personal knowledge, lack of expertise, hearsay, and undue prejudice.

60:18-62:3 [if relevance objections are overruled] Treasure Island objects to this testimony on grounds of relevance, foundation, lack of personal knowledge, lack of expertise, hearsay, and undue prejudice.

67:7-25 [if relevance objections are overruled] Treasure Island objects to this testimony on grounds of relevance, foundation, lack of personal knowledge, lack of expertise, hearsay, and undue prejudice.

<u>Brian Cook Volume I</u>
6:22-7:8
8:3-13
9:3-25
14:11-15:9 Treasure Island objects to this testimony on grounds of relevance, foundation, lack of personal knowledge, lack of expertise, hearsay, and undue prejudice.
18:21-19:6
45:8-46:18 Treasure Island objects to this testimony on grounds of relevance, foundation, lack of personal knowledge, lack of expertise, hearsay, and undue prejudice.

      f.   Objections to Depositions: The parties otherwise object to the use of deposition transcripts and videotaped depositions of any other witnesses offered by the parties, to the extent allowable by the rules of evidence, and consistent with the rules of unavailability.

## VIII.   WITNESSES

The following witnesses may be called by the parties at trial:

**a.  Plaintiff's witnesses.**

    1.   Courtney Barnaby
        c/o Treasure Island Hotel & Casino
        3300 Las Vegas Blvd
        Las Vegas, NV 89109

    2.   Brad Anthony
        c/o Treasure Island Hotel & Casino
        3300 Las Vegas Blvd
        Las Vegas, NV 89109

3. Tara Cummins
   c/o Treasure Island Hotel & Casino
   3300 Las Vegas Blvd
   Las Vegas, NV 89109

4. Gerry Griffis
   c/o Treasure Island Hotel & Casino
   3300 Las Vegas Blvd
   Las Vegas, NV 89109

5. Kenny Cho
   c/o Treasure Island Hotel & Casino
   3300 Las Vegas Blvd
   Las Vegas, NV 89109

6. Craig Taylor
   c/o Treasure Island Hotel & Casino
   3300 Las Vegas Blvd
   Las Vegas, NV 89109

7. Margo Porter
   c/o Treasure Island Hotel & Casino
   3300 Las Vegas Blvd
   Las Vegas, NV 89109

8. David DeLeon
   c/o Treasure Island Hotel & Casino
   3300 Las Vegas Blvd
   Las Vegas, NV 89109

9. Employee 77292
   c/o Treasure Island Hotel & Casino
   3300 Las Vegas Blvd
   Las Vegas, NV 89109

10. Employee 405358
    c/o Treasure Island Hotel & Casino
    3300 Las Vegas Blvd
    Las Vegas, NV 89109

11. Dr. Angela L. Rasmussen
    c/o Hunton Andrews Kurth LLP
    2200 Pennsylvania Ave. NW
    Washington, DC 20037

12. Dr. Alex LeBeau
    c/o Hunton Andrews Kurth LLP
    2200 Pennsylvania Ave. NW
    Washington, DC 20037

13. Joe Lewnard
    c/o Hunton Andrews Kurth LLP
    2200 Pennsylvania Ave. NW
    Washington, DC 20037

14. Brian Twellman
    c/o Hunton Andrews Kurth LLP
    2200 Pennsylvania Ave. NW
    Washington, DC 20037

15. Dr. Kevin Cahill
    c/o Hunton Andrews Kurth LLP
    2200 Pennsylvania Ave. NW
    Washington, DC 20037

16. Timothy Yessman
    c/o Hunton Andrews Kurth LLP
    2200 Pennsylvania Ave. NW
    Washington, DC 20037

**b. Defendant's witnesses.**

1. John Baker
   FM Global
   Staff Vice President, Executive General Adjuster
   May be contacted through AFM's counsel
   Robins Kaplan LLP
   800 LaSalle Avenue, Suite 2800
   Minneapolis, MN 55402

2. Brian G. Bueche
   Senior Production Underwriter
   Affiliated FM Insurance Company
   May be contacted through AFM's counsel
   Robins Kaplan LLP
   800 LaSalle Avenue, Suite 2800
   Minneapolis, MN 55402

3. David Carroll
   Previously with FM Global, since retired
   May be contacted through AFM's counsel
   Robins Kaplan LLP

800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402

4. Jeffrey Casillas
   FM Global
   May be contacted through AFM's counsel
   Robins Kaplan LLP
   800 LaSalle Avenue, Suite 2800
   Minneapolis, MN 55402

5. Brian Cook
   Previously with FM Global, since retired
   May be contacted through AFM's counsel
   Robins Kaplan LLP
   800 LaSalle Avenue, Suite 2800
   Minneapolis, MN 55402

6. Maxine Walker
   FM Global
   Vice President, Division Claims Manager
   May be contacted through AFM's counsel
   Robins Kaplan LLP
   800 LaSalle Avenue, Suite 2800
   Minneapolis, MN 55402

7. Jason Wing, CPCU
   FM Global
   Operations Vice President & Sr. General Adjuster
   May be contacted through AFM's counsel
   Robins Kaplan LLP
   800 LaSalle Avenue, Suite 2800
   Minneapolis, MN 55402

8. Mark Newton
   AFM Expert
   Executive Vice President of J.S. Held
   3101 North Central Avenue, Suite 670
   Phoenix, AZ 85012
   May be contacted through AFM's counsel
   Robins Kaplan LLP
   800 LaSalle Avenue, Suite 2800
   Minneapolis, MN 55402

9. Mark A. Roberts, M.D., Ph.D.
   AFM Expert
   Principal Scientist

Exponent
May be contacted through AFM's counsel
Robins Kaplan LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402

Defendant reserves the right to call rebuttal and/or impeachment witnesses not listed herein at trial; and

Defendant reserves the right to call any witnesses identified in Plaintiff's and Defendant's FRCP 26(a)(1) and/or FRCP 26(a)(3) disclosures and supplements thereto, as well as any witness identified in Defendant's written discovery responses.

## IX.    AVAILABILITY FOR TRIAL AND TIME TO FILE MOTIONS

The attorneys or parties have met and jointly offer these three trial dates:

1.) December 9, 2024          2.) March 3, 2025          3.) March 10, 2025.

It is expressly understood by the undersigned that the Court will set the trial of this matter on one of the agreed-upon dates if possible; if not, the trial will be set at the convenience of the Court's calendar.

Additionally, the Parties shall file any Motions in Limine 90 days before trial.

## X.    ESTIMATED TIME FOR TRIAL

Plaintiff estimates that the trial will take a total of five (5) to ten (10) days. Defendant estimates that the trial will take a total of eight (8) to twelve (12) days. A jury trial has been requested by Defendant and Plaintiff.

XI.     CERTIFICATION OF THE PARTIES

The parties hereby certify that they considered consent to trial by a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, use of the Short Trial Program (General Order 2013-01), and the use of alternative dispute-resolution processes including mediation, arbitration, and early neutral evaluation. However, the parties have not agreed to trial by a magistrate judge or the use of the short trial program.

IT IS SO PROPOSED.

DATED this 29th day of April, 2024.          DATED this 29th day of April, 2024.


**MESSNER REEVS LLP**                        **ROBINS KAPLAN LLP**

/s/ Renee M. Finch_____              /s/ Scott G. Johnson_____
Renee M. Finch                               Scott G. Johnson*
Nevada State Bar 13118                        800 LaSalle Avenue. Suite2800
8945 W. Russell Road, Suite 300              Minneapolis, MN 55402
Las Vegas, NV 89148                          Phone: (611) 349-8500
Phone:  (702) 363-5100                       Email: sjohnson@robinskaplan.com
Email:  rfinch@messner.com
                                             Erica A. Ramsey*
**HUNTON ANDREW KURTH LLP**                  140 North Philips Avenue, Suite 307
                                             Sioux Falls, SD 57104
Michael S. Levine*                           Phone: (605) 740-7104
mlevine@huntonak.com                         Email: eramsey@robinskaplan.com
Harry L. Manion III*
hmanion@huntonak.com                         **CARLSON,  CALLADINE  &  PETERSON**
Christopher J. Cunio*                        **LLP**
ccunio@huntonak.com
Nicholas D. Stellakis*                       Joyce C. Wang*
nstellakis@huntonak.com                      Colin C. Munro*
HUNTON ANDREWS KURTH LLP                      353 Sacramento Street, 16th Floor
2200 Pennsylvania Ave. NW                    San Francisco, CA 94111
Washington, DC 20037                         Phone: (415) 391-3911
Phone:  (202) 955-1500                       Email: jwang@ccplaw.com
                                                    cmunro@ccplaw.com

*Admitted pro hac vice

41

**FOX ROTHSCHILD LLP**

Mark J. Connot
Nevada State Bar 89135
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
Phone: (702) 699-5924
Email: mconnot@foxrothschild.com


*Admitted *pro hac vice*

**Case Name:** *Treasure Island, LLC v. Affiliated FM Insurance*
**Case No.:** *2:20-cv-00965-JCM-EJY*

## XI.

## ACTION BY THE COURT

This case is set for court/jury trial on the fixed/stacked calendar on **March 10, 2025, at 9:00 a.m.** in Courtroom 6A.

Calendar call will be held on **March 5, 2025, at 1:30 p.m.** in Courtroom 6A. The deadline for the Parties to file Motions in Limine and/or Motions for Sanctions will be **January 12, 2025.**

This pretrial order has been approved by the parties to this action as evidenced by their signatures or the signatures of their attorneys hereon, and the order is hereby entered and will govern the trial of this case. This order may not be amended except by Court order and based upon the parties' agreement or to prevent manifest injustice.

DATED April 30, 2024

_____
UNITED STATES DISTRICT JUDGE