UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Treasure Island, LLC,

        Plaintiff

v.

Affiliated FM Insurance Company,

        Defendant

Case No. 2:20-cv-00965-CDS-EJY

**Order Resolving Pending Motions**

[ECF Nos. 302, 307, 308]

    This action is an insurance dispute between plaintiff Treasure Island, LLC and defendant Affiliated FM Insurance Company ("Affiliated"). On April 10, 2024, Affiliated filed a motion for reconsideration of the court's March 29, 2024 order granting in part and denying in part Affiliated's motion for summary judgment, or in the alternative, partial summary judgment (ECF No. 265).[1] Mot., ECF No. 302. On April 26, 2024, Treasure Island filed a cross-motion for reconsideration. Cross-mot., ECF No. 307.[2] For the reasons set forth herein, I grant Affiliated's motion for reconsideration. Because granting summary judgment in Affiliated's favor is dispositive, I deny Treasure Island's cross-motion for partial reconsideration as moot.

I.     **Relevant facts**

    The parties are familiar with the facts that give rise to this action, so I need not restate all of them here. Rather, I only summarize facts and sections of the insurance policy that are relevant to resolution of the pending motions. First, there is no dispute that Treasure Island had an insurance policy issued by Affiliated for a term commencing on March 20, 2019, and ending on March 20, 2020. Exhibit A to compl., Policy No. GS784, ECF No. 2-1. The Policy detailed coverage and its exclusions. *Id.* It states that "[i]n addition to the exclusions elsewhere in this Policy, the following exclusions apply unless otherwise stated." *Id.* at 18. As relevant here, three

---

[1] This case was administratively reassigned to me on November 18, 2024. ECF No. 326.
[2] Treasure Island filed a redacted public version of its motion at ECF No. 307 and a sealed version at ECF No. 308.

exclusions in this section include "[i]nterruption of business, except to the extent provided in this Policy[,]" "loss of mark or loss of use[,]" and a separate provision regarding contamination. *Id.* at 20–21. The contamination exclusion reads as follows:

> "**Contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. *If **contamination** due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured.* This exclusion does not apply to radioactive contamination which is excluded elsewhere in this Policy."

*Id.* at 21 (bold emphasis in original, italics added).

The Policy also contains an "Additional Coverages" provision which includes a "Communicable Disease – Property Damage" section. *Id.* at 23. It states in relevant part that "[i]f a described location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such described location is limited, restricted or prohibited by: a) An order of an authorized governmental agency regulating or as result of such presence of communicable disease; or b) A decision of an Officer of the Insured as a result of such presence of communicable disease . . . ." *Id.* at 23.

There is another section entitled "Business Interruption" which insures losses as a result of business interruptions, "as a direct result of **physical loss or damage** of the type insured: (1) To property as described elsewhere in this Policy and not otherwise excluded by this Policy, (2) Used by the Insured; (3) While at a location or while in transit as provided by this Policy; and (4) During the Period of Liability as described elsewhere in this Policy." *Id.* at 35 (emphasis added). However, it only insured Business Interruption loss to the extent it could be reduced through "(1) The use of any property or service owned or controlled by the Insured; (2) The use of any property or service obtainable from other sources; (3) Working extra time or overtime; or (4) The use of inventory[.]" *Id.*

According to the Policy, the insurer, in determining the amount of loss payable, would consider:

1. Any amount recovered elsewhere under this Policy for loss or damage to finished goods or merchandise at selling price as having been sold to the Insured's regular customers and credited against net sales.

2. The experience of the business before and after and the probable experience during the Period of Liability. The probable experience will also consider any increase or decrease in demand for the Insured's goods or services during the Period of Liability, even if such increase or decrease is from the same event that caused physical loss or damage starting the Period of Liability.

3. The continuation of only those normal charges and expenses that would have been earned had there been no interruption of production or business operations or services.

*Id.* Additionally, "[t]his Policy also covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this Policy. The amount of such recoverable expenses will not exceed the amount by which the loss is reduced." *Id.*

A related subsection "Communicable Disease – Business Interruption" in the "Business Interruption Coverage Extensions" provision of the Policy states:

If a **described location** owned, leased or rented by the Insured has the actual not suspected presence of **communicable disease** and access to such **described location** is limited, restricted or prohibited by:

**a)** An order of an authorized governmental agency regulating such presence of **communicable disease**; or

**b)** A decision of an Officer of the Insured as a result of such presence of **communicable disease**,

This Policy covers the Business Interruption Coverage loss incurred by the Insured during the Period of Liability at such **described location** with such presence of **communicable disease**.

This coverage is subject to the Qualifying Period in the Declarations section of this Policy.

Communicable Disease - Business Interruption Exclusions: As respects Communicable Disease - Business Interruption, the following additional exclusions apply:

This Policy does not insure loss resulting from:

a) The enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of **communicable disease**.

b) Loss or damage caused by or resulting from terrorism, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

The Period of Liability for this Business Interruption Coverage Extension will be:

The period of time:

a) Starting at the time of the order of the authorized governmental agency or the Officer of the Insured; but

b) Not to exceed the time limit shown in the Limits of Liability clause in the Declarations section,

This period of time is part of and not in addition to any Period of Liability applying to any coverage provided in the Business Interruption section.

*Id.* at 41 (emphasis in original).

## II.     Relevant procedural history

On June 22, 2023, Affiliated filed a motion for summary judgment, or in the alternative, partial summary judgment. Mot. for summ. j., ECF No. 265. Therein, Affiliated argued there was no genuine issue of material fact because "Plaintiff's claims were not covered and/or are excluded under the [insurance] Policy issued by [it]," so Treasure Island's claims fail. ECF No. 265 at 7. Affiliated sought partial summary judgment as alternative relief. *Id.* On July 25, 2023, Treasure Island filed an opposition to the motion (ECF No. 278), arguing that the court should not decide the motion until the Supreme Court of Nevada ("NSC") decided *Starr Surplus Lines Ins. Co. v. Eighth Jud. Dist. Ct.*, No. 84986 ("JGB Appeal"),[3] but even if decided before the NSC rendered a decision in that case, there is sufficient evidence for a jury to decide that Affiliated's "all-risk policy" was triggered by the COVID-19 pandemic. ECF No. 278 at 10.

---

[3] *Starr Surplus Lines Ins. Co. v. Eighth Jud. Dist. Ct.*, 535 P.3d 254 (Nev. 2023).

4

On September 26, 2023, Treasure Island filed a motion for leave to file notice of supplemental authority, noting that the NSC had rendered a decision on the JGB Appeal. ECF No. 280. The court denied the motion. Order den. mot. for leave, ECF No. 299.

On March 29, 2024, the court issued an order granting in part and denying in part Affiliated's motion for summary judgment. Order, ECF No. 301. Specifically, the court granted summary judgment as to the breach of the implied convent of good faith and fair dealing and violation of the Nevada Unfair Claims Practices Act but denied summary judgment on the breach of contract claim and Treasure Island's request for declaratory judgment. *Id.* Thereafter, the parties filed the pending motions for reconsideration. ECF No. 302; ECF No. 307.

### III. Legal framework

A motion for reconsideration of summary judgment is appropriately brought either under Fed. R. Civ. P. 59(e) or 60(b). Local Rule 59-1(a); *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1442 (9th Cir. 1991). A party seeking reconsideration of an interlocutory order (a non-case dispositive order) "must state with particularity the points of law or fact that the court has overlooked or misunderstood." LR 59-1(a).[4] "Reconsideration also may be appropriate if (1) there is newly discovered evidence that was not available when the original motion or response was filed, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* "A movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts." LR 59-1(b).

### IV. Discussion

Affiliated argues reconsideration of the summary judgment order is appropriate here because the prior order failed to consider, and is in direct conflict with, the Supreme Court of Nevada's *Starr Surplus* decision, so it is consequently clearly erroneous. I agree.

---

[4] Affiliated seeks reconsideration under Local Rule 59-1. ECF No. 302 at 5.

In *Starr Surplus*, the NSC resolved as a matter of first impression whether the presence of the COVID-19 virus caused physical loss or damage to property. In a unanimous decision, the court rejected the insured's argument that COVID-19 virus "altered the surfaces or air of the covered property," therefore triggering the insurance policy's "all-risk" provision. *Id.* at 260. Instead, the court held that the term "'[p]hysical' has to mean something," *Starr Surplus*, 535 P.3d at 263 (citing *Wakonda Club v. Selective Ins. Co. of Am.*, 973 N.W.2d 545, 549, 552 (Iowa 2022)), so the physical loss or damage provisions of an insurance policy require that "the property must receive or be affected by actual physical harm." *Id.* at 264.

Treasure Island advances the *same* rejected argument made by the insured in *Starr Surplus*: that COVID-19 caused physical loss or damage to the property and therefore the "all risks" policy was triggered. *See* Opp'n to mot. for summ. j., ECF No. 278 at 25–31; Compl., ECF No. 1 at 4–10. Treasure Island also advances the *same* rejected arguments that presence of the COVID-19 virus, or "fomites," rendered the property uninhabitable and resulted in a loss of use of the property. *See generally* ECF No. 278. Treasure Island fails to "demonstrate how [it was] subject to the type of material, tangible harm constituting direct physical loss or damage 'within the meaning of the policy.'" *See Starr Surplus*, 535 P.3d at 264 (citing *Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Co.*, 302 A.3d 67, 72 (N.H. May 11, 2023)). Indeed, like the insured in the *Starr Surplus* case, although Treasure Island was closed due to the Governor of Nevada's Directive,[5] the business remained physically intact and functional, and the property was neither lost nor changed due to the presence of the virus. *See Starr Surplus*, 535 P.3d at 265–67. Treasure Island was closed pursuant to the directive to try and minimize the impacts of and slow the spread of the virus. ECF No. 2-2 (the Directive ordering "[t]he State Emergency Operations Center be activated to coordinate a response to minimize the impacts, and prevent the further transmission of, COVID-19 to persons in this state").

---

[5] *See* Decl. of emergency for COVID-19, Pl.'s Ex. B to compl., ECF No. 2-2.

Stated otherwise, *Starr Surplus* conclusively forecloses Treasure Island's breach of contract claims for relief. Treasure Island's bad faith claim also fails. An insurer breaches that duty (acts in bad faith) when it denies benefits due under the policy without a reasonable basis for the denial. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 326 (Nev. 2009) (citing *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354–55 (Nev. 1986)). Thus, the key to a bad faith claim is the reasonableness of the insurer's denial. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). Here, the evidence—and controlling authority—demonstrates that Affiliated's denial of Treasure Island's claim was reasonable.

Finally, because Treasure Island's Unfair Claim Practices Act claim allegations are directly related to the now-foreclosed breach of contract claims, that claim also fails. Nevada Revised Statute 686A.310 similarly prohibits insurers from failing to effectuate prompt, fair, and equitable settlements of insurance claims when liability of the insurer has become reasonably clear. NRS 686A.310. Affiliated's obligations under the Policy were not clear at the time it denied coverage to Treasure Island. It was not until September 2023, more than three years after Treasure Island sought coverage under the Policy,[6] when the Supreme Court of Nevada decided the *Starr Surplus* case, that its lack of liability was clarified.

The decision denying Affiliated's motion for summary judgment constitutes clear error, so I grant its motion for reconsideration. I grant its motion for summary judgment in its favor on all claims. Because its motion is dispositive, I deny Treasure Island's motion for reconsideration as moot.

## V. Conclusion

IT IS HEREBY ORDERED that defendant Affiliated FM Insurance Company's motion for reconsideration **[ECF No. 302] is GRANTED**.

---

[6] *See* Ex. F to the compl., ECF No. 2-6 (email communication wishing to submit a claim for Business Interruption").

IT IS FURTHER ORDERED that defendant Affiliated FM Insurance Company's motion for summary judgment **[ECF No. 265] is GRANTED**.

IT IS FURTHER ORDERED that plaintiff Treasure Island's cross-motion for partial reconsideration **[ECF No. 307/308] is DENIED as moot**.

The Clerk of Court is kindly directed to enter judgment in favor of defendant Affiliated FM Insurance Company and to close this case.

Dated: November 27, 2024

_____
Cristina D. Silva
United States District Judge